## SPRINKLE et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. November 9, 1905.)

No. 606.

1. CRIMINAL LAW—EVIDENCE—DECLARATIONS OF CODEFENDANTS—RES GESTÆ.

Where defendants on trial were jointly indicted with others, charged with engaging in and carrying on business as rectifiers in the names of certain companies organized by them with intent to defraud the United States of the taxes on spirits so rectified by them, although conspiracy is not charged, statements made by the defendants not on trial are admissible in evidence to show intent, where so connected with the acts and transactions charged as to constitute a part of the res gestæ.

2. SAME—JOINT TRIAL OF DEFENDANTS—EVIDENCE.

On the trial of defendants jointly indicted and tried for defrauding the United States of taxes on distilled liquors, evidence is admissible, although it apparently relates to one or more, but not all, of the defendants, and especially where proof of the corpus delicti depends on establishing a variety of different facts covering a long period of time and widely separated one from the other.

3. INTERNAL REVENUE—PROSECUTION FOR OFFENSES—EVIDENCE.

On the trial of defendants, charged with a violation of the internal revenue laws, the instructions, rules, and regulations prescribed by the Commissioner of Internal Revenue, as authorized by statute, are admissible in evidence where pertinent to the issues.

4. CRIMINAL LAW—RULING ON MOTION FOR NEW TRIAL—REVIEW.

In the federal courts the ruling of the trial court on a motion for new trial in a criminal case is not reviewable.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 3067.]

5. SAME—CIRCUMSTANCES AS EVIDENCE.

Circumstances attending a particular transaction under investigation by a jury, if so interwoven with each other and with the principal fact that they cannot well be separated without depriving the jury of proof that is essential in order to reach a just conclusion, are admissible in evidence.

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro.

The plaintiffs in error were indicted jointly with H. C. Sprinkle and J. T. Sprinkle for violation of the internal revenue laws. The indictment contains ten counts. The first count charges that the five persons named carried on the business of rectifiers of spirituous liquors, with intent to defraud the United States of the tax on the spirits rectified by them. The third, fifth, seventh, and eighth counts charge the said five defendants with engaging in and carrying on the business of rectifiers of distilled spirits in the names, respectively, of the Oak Grove Liquor Company, the Milton Liquor Company, the Reidsville Liquor Company, and in the name of William Young, with intent to defraud the United States of the tax on the spirits so rectified by them. The second, fourth, and sixth counts charge the said five defendants in the names, respectively, of the Oak Grove Liquor Company, the Milton Liquor Company, and the Reidsville Liquor Company, with knowingly making the false entries in certain books required by law to be kept in the rectifying business carried on in the names of the said three companies. The ninth count charges that said five defendants did unlawfully and willfully remove, and aid and abet in removing, one cask of distilled spirits, on which the tax had not been paid as required by law, to a place other than a distillery warehouse provided by law; and the tenth count charges that said five persons did unlawfully and willfully conceal one cask of distilled spirits, on which the tax had not been paid, which had been removed to a place other than a distillery ware-

house required by law—all contrary to the form of the statute in such case made and provided. The sections of the revised statutes violated are, for carrying on the business as rectifiers of distilled spirits, section 3317, Rev. St. (as amended by Act March 1, 1879, c. 125, 20 Stat. 339) ; for making false entries, section 3318, Rev. St. (as amended 20 Stat. 339 [U. S. Comp. St. 1901, p. 2164]) ; and the removal and concealment, section 3296, Rev. St. ·[U. S. Comp. St. 1901, p. 2136].

The plaintiffs in error, in the absence of the defendants H. C. and J. T. Sprinkle, who were fugitives from justice, on the 26th day of April, 1904, appeared in person and by counsel, and upon being arraigned pleaded not guilty ; and a jury was impaneled for their trial, which lasted from thence to the 4th day of May, 1904, a great mass of evidence having been introduced in behalf of the government, at the conclusion of which none was offered by the defense. Thereupon, after full argument had, and an appropriate charge by the court, a verdict was returned on the 4th day of May, 1904, finding the three defendants named guilty as charged in the first nine counts of the indictment. A motion for a new trial was entered and overruled. The plaintiff in error B. F. Sprinkle was sentenced to two years in the penitentiary and to pay a fine of $5,000 ; the plaintiff in error T. M. Angle, to a term of one year in the penitentiary, and to pay a fine of $1,000 ; and the defendant William Young to a term of six months in jail in said district and to pay a fine of $1,000. Sundry exceptions were regularly taken pending the trial, and assignments of error properly presented, and this writ of error allowed.

The government's contention, briefly, is that these several defendants were acting in concert, and in so doing used the names of the Oak Grove Liquor Company, the Milton Liquor Company, and the Reidsville Liquor Company, and William Young, in order more effectively to accomplish their object and defraud the government ; that said companies and William Young were in fact one and all the same ; that in order to carry out their unlawful purpose they caused to be started what was known as the Jones Company, of Louisville, Ky., the Diamond Distillery Company, of Louisville, Ky., the Merchants' Liquor Company, of Indianapolis, Ind., and the Danville Distributing Company, of Danville, Ill. ; that the fraud upon the government was principally committed by these last-named companies, at their respective places of business, purchasing what was known as wholesale liquor dealers' stamps at low proof, and sending them to the companies in North Carolina, more particularly to the Oak Grove and Milton Companies, and the proof raised so as to put out on the market, under the color of these stamps, large quantities of distilled spirits that had not in fact paid taxes to the United States ; that said stamps were not sent into North Carolina upon packages of spirits at all, but by a more rapid transit than ordinary freight, and there utilized by one or more of the North Carolina companies upon packages of distilled spirits which had not therefore paid the tax ; that the stubs of the stamps so issued from Louisville, Indianapolis, and Springfield, and the serial number of the same stamps, as shown by the rectifiers' reports and the gaugers' reports at the Oak Grove Liquor Company, the Milton Liquor Company, and the Reidsville Liquor Company, showed that the stamps which were issued at 9 and 10 proof at Louisville, Indianapolis, and Springfield aforesaid, had been brought into North Carolina, and raised to 188 and 190 proof ; and that the said defendants had been credited by the collector of internal revenue in North Carolina, upon this fraudulent change in these stamps, whereby the government was defrauded of taxes amounting to over $100,000. The government further contends that the defendants, by one or more of their rectifying companies, bought distilled spirits from Fleischman and others, in Cincinnati, Ohio, at low proof of 50 or 60 per cent. ; that the stamps attached to the packages of spirits thus bought, were sent to one or more of their companies ; that there the basis of the rectifier's credit was so changed as to show a proof of 188 to 190, this affording another opportunity for putting upon the market distilled spirits on which the tax had not been paid ; and also that the defendants, particularly Angle and Young, made false entries in their rectifiers' books used in their business.

# SPRINKLE V. UNITED STATES.

The plaintiffs in error insist on the other hand, briefly, that they knew nothing of the conduct of the business of the companies in Louisville, Indianapolis, and Danville, and the Oak Grove, Milton, and Reidsville Companies, and that there was no evidence to connect them with these transactions, and insist, further, that the Reidsville Company was owned and operated by the defendant J. T. Sprinkle, and the Oak Grove and Milton Liquor Companies were owned and operated by the defendant H. C. Sprinkle; that the business of the plaintiff in error Young, as a rectifier and wholesale liquor dealer, was entirely separate and distinct from their business; that they had no interest in it, and that, as to those other companies, the transactions in regard to checks, orders for sale of liquor, and soliciting sales of liquor, and the order to one company, and the sale by another company, were nothing more than ordinary transactions of business, carried on by persons engaged in similar undertakings. The following extract from the charge of Judge Boyd, of the lower court, who by reason of his ability and long official experience in revenue matters, is particularly well qualified to speak, is here inserted, with the view of making clear just how distilled spirits are stamped and put upon the market, and the business of rectifiers of distilled spirits conducted:

"It may be well that I should call to your attention the method by which distilled spirits are stamped and put upon the market. All taxes are paid upon distilled spirits in the bonded warehouse. Every registered distiller is required to have what is known as a bonded warehouse, and the product of his distillery, when it is produced, is carried from his cistern room to this bonded warehouse, and there it is reported to the collector—the number of wine gallons, and the number of proof gallons in each package, the date of its production and the date on which it was put in the warehouse, and the package numbered by the storekeeper and gauger. When the distiller desires to put that spirits upon the market, he sends up to the collector what is known as withdrawal papers, in which he describes the spirits, and if the spirits is 100 proof or upwards, he pays $1.10 upon every proof gallon. The stamps are affixed and canceled by the storekeeper and gauger, and that pays the tax upon a gallon of distilled spirits. No further tax is ever collected upon that spirits. That is the payment of the tax, and is what the government requires. Rectifying establishments change distilled spirits from its original character in the tax paid packages. That is what they do. They don't produce distilled spirits, but they take them in the original packages, in stamped packages, and they change their proof and character without the payment of any further tax. They simply pay the license for the purpose of carrying on the business of rectifiers. To illustrate: If one is a rectifier of distilled spirits, he buys a 50-gallon barrel of 100 proof spirits. 100 proof is the standard. That spirits has paid $1.10 per gallon on 50 gallons, and the stamp is upon it to indicate that that tax has been paid, and the stamp is canceled upon the head of the barrel and the bung staves are marked so as to identify and describe the package. The rectifier takes that 50-gallon package, and says to the collector: 'I wish to dump this package for rectification; that is, I wish to pour it out of this package and change its proof and character, and put it upon the market'—and he describes that spirits, and thereupon a gauger is sent to his establishment to see if that package is what he describes it to be, and upon the gauger's report he is authorized to add coloring to it, or do whatever he sees proper, and put it upon the market. If he takes 50 gallons of 100 proof and reduces it so as to make 500 gallons of rectified stuff without the addition of a single dollar—he pays no further tax. In order, then, to put his spirits upon the market, he has to have wholesale liquor dealer's license and stamps. A rectifier, in order to sell in quantities of five gallons and upwards, must be a wholesale dealer, and upon his certificate, they furnish him these wholesale stamps. So, then, gentlemen, if the rectifier, after he has bought the 50-gallon barrel of 100 proof spirits, reduced its proof and made 500 gallons, gets the stamps for nothing, and uses them for high proof spirits, he defrauds the government. That is, to take a 10 proof stamp, and certify to the collector that it was on a package of 190 proof spirits, is a fraud; for that gives the rectifier credit for having stamps for 190 proof, instead of only 10 proof, increases his credit 19 times. In order to give evidence to the collector of the proof of the

spirits in the packages, these stamps are so constructed that in the middle of them is what is known as the 'clip.' The clip is simply a history of the package printed upon it, the number of the stamp, the name of the collector who issued it, and the number of proof and wine gallons in the package. There is a piece of red paper under the clip, and, when it is adjusted to the barrel, this clip can be cut out so as to be sent to the collector's office, and that is the evidence to the collector that that particular package of whiskey is in that rectifying establishment for the purpose of being rectified."

Reuben D. Reid, E. J. Justice, S. B. Adams, and William P. Bynum, Jr., for plaintiffs in error.

A. E. Holton, U. S. Atty., and A. H. Price, Asst. U. S. Atty.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

WADDILL, District Judge, after stating the facts as above, delivered the opinion of the court.

The questions presented for our consideration relate almost exclusively to the correctness of the rulings of the court below upon the admission or rejection of evidence pending the trial, the refusal of the court to give certain instructions asked for by the plaintiffs in error, and to the entry by the lower court of judgment upon the verdict of the jury against them; they having interposed no objection to the indictment by way of motion to quash plea in abatement, or demurrer thereto, introduced no evidence in their own behalf, and made no objection to the charge of the lower court as given.

Plaintiffs in error insist that the evidence offered by the government as to the acts, conduct, and transactions of the several defendants, in the different states, had in connection with the purchase of stamps, together with declarations made by any of them in procuring such stamps, or had and made in connection with the several businesses alleged to have been organized, owned, and conducted by them, could only have been introduced against the defendants J. T. and H. C. Sprinkle, the parties making such declarations, or owning such companies, and not against the defendants on trial, the plaintiffs in error here, who disavow all knowledge of and connection with such transactions; there being no count in the indictment charging them as conspirators, and had there been such count, only declarations made in furtherance of the common undertaking should have been admitted. The character of the case under consideration has necessarily to be taken into account in passing upon questions affecting the admission and exclusion of evidence, in order to determine how far the acts, conduct, transactions, and declarations of any of the codefendants may have been admissible; the government disputing as a matter of fact that any such declarations were admitted.

The defendants are jointly charged in the first, third, fifth, seventh, and eighth counts of the indictment with engaging in and carrying on business as rectifiers of spirituous liquors, with intent to defraud the United States of the taxes on the spirits so rectified by them. The Supreme Court in United States v. Simmons, 96 U. S. 360, 24 L. Ed. 819, passed upon the meaning of the language "knowingly and unlawfully engaging in and carrying on the business of a distiller,

with intent to defraud the United States" in the purview of its revenue laws, in which the court held that the intent to defraud the United States was of the very essence of the offense; that'the commission of the act complained of, coupled with the intent to defraud the government, was what constituted the crime; that, unless both conditions existed, no crime was committed; and that the existence of fraud in connection with the business of distilling must be established by satisfactory evidence—the court concluding (page 364 of 96 U. S. [24 L. Ed. 819]):

"Such intent may, however, be manifested by so many acts on the part of the accused, covering such a long period of time, as to render it difficult, if not wholly impracticable, to aver with any degree of certainty all the essential facts from which it may be fairly inferred."

"The means of effecting criminal intent," says Mr. Wharton, "or the circumstances evincive of the design with which the act was done, are considered to be matters of evidence to go to the jury, to demonstrate the intent, and not necessary to be incorporated in the indictment." 1 Whart. § 292. The reason for this rule of evidence, where the question of the intent with which a particular act may have been committed or transaction entered into becomes material, is very apparent, and the necessity of arriving at such intent from a full and fair consideration of all the facts and circumstance, including the acts of the accused, is manifest. In many cases the purpose and intent with which a person acts can only be reached by fair inference, and reasonable conclusions to be drawn from what he does, or his acts and conduct, would necessarily indicate. A contrary view would not unfrequently most seriously affect the innocent.

The objections apparently rest upon the theory that, inasmuch as the indictment did not contain a count for conspiracy, evidence of this character should for that reason be rejected. But this position is manifestly not well founded. In St. Clair v. United States, 154 U. S. 134, 149, 14 Sup. Ct. 1002, 38 L. Ed. 936, a case of the indictment of three persons jointly for murder upon the high seas, the court said, speaking of this very position as to the necessity of the charge of conspiracy:

"These objections seem to rest upon the general ground that the indictment did not charge St. Clair, Sparf, and Hanson, as co-conspirators. The evidence was not for that reason to be rejected. St. Clair, Sparf, and Hanson were charged jointly with having killed and murdered Fitzgerald. The acts, appearances, and declarations of either, if part of the res gestæ, were admissible for the purpose of presenting to the jury an accurate view of the situation as it was at the time the alleged murder was committed."

Continuing, the court said:

"Circumstances attending a particular transaction under investigation by a jury, if so interwoven with each other and with the principal fact that they cannot well be separated without depriving the jury of proof that is essential in order to reach a just conclusion, are admissible in evidence."

Continuing on the subject of the res gestæ, the court further said:

" 'These surrounding circumstances, constituting part of the res gestæ,' Greenleaf says, 'may always be shown to the jury along with the principal fact, and their admissibility is determined by the judge according to the degree

of their relation to that fact, and in the exercise of his sound discretion; it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description.' 1 Greenleaf (12th Ed.) § 108. See, also, 1 Bishop's Cr. Proc. §§ 1083–1086. 'The res gestæ,' Wharton said, 'may be, therefore, defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. They may consist of speeches of any one concerned, whether participant or bystander. They may comprise things left undone as well as things done. Their sole distinguishing feature is that they should be the necessary incidents of the litigated act; necessary in this sense that they are part of the immediate preparations for or emanations of such act, and are not produced by the calculating policy of the actors. In other words, they must stand in immediate causal relation to the act—a relation not broken by the interposition of voluntary individual wariness seeking to manufacture evidence for itself. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act.' 1 Wharton, Ev. (2d Ed., 1879) § 259."

In the present case, five persons are charged with the conduct of a business, lawful in itself, but which became unlawful because of the intent with which it is charged to have been carried on; and it is alleged in the indictment, that the purpose of the three companies within the state of North Carolina was the better to effect the unlawful object; and from the proof it appears that four companies in three different states of the Union were also used to effect such unlawful undertaking—that is, to defraud the United States—and that the said defendants jointly, as individuals and in the names of the said companies, were knowingly engaged in defrauding, and did defraud, the government of its revenue. This necessarily involved a variety of transactions, covering many times and places, long distances one from the other, and during a period of some 12 months. But, so far as the crime is concerned, when once established, they all were and became a single transaction, and in that view clearly admissible. Ought not the acts, conduct, and doings of each of the defendants—not their statements, declarations, or admissions necessarily, but what they or either of them may have done—in and about any material transaction forming a necessary part of the business in hand, whereby the government was defrauded of its revenue, manifestly be submitted to the jury, with a view of determining the bona fides of their acts; that is, their intent in the premises? They should, of course, be the necessary incidents of the litigated act, and such acts, incidents, and doings as are necessarily and unconsciously associated with the crime as committed. The fact that the circumstances attending a particular transaction, when so interwoven with each other and with the principal fact that they cannot be separated without depriving the jury of what is essential, may be submitted to the jury, seems now well recognized and settled. St. Clair v. United States, 154 U. S. 149, 14 Sup. Ct. 1002, 38 L. Ed. 936; Beaver v. Taylor, 68 U. S. 637, 742, 17 L. Ed. 601; Insurance Co. v. Mosley, 75 U. S. 397, 407–8, 19 L. Ed. 437; Clune v. U. S., 159 U. S. 590, 592, 16 Sup. Ct. 125, 40 L. Ed. 269; Wiborg v. U. S., 163 U. S. 632, 657, 16 Sup. Ct. 1127, 41 L. Ed. 289.

In Insurance Co. v. Mosley, 75 U. S. 397, 19 L. Ed. 437, supra, a case involving liability under an insurance policy, and how far the statements of the insured made as to the manner and extent of his injury prior to the time of his death, could be introduced by his estate in his behalf, Mr. Justice Swayne, speaking for the Supreme Court, said:

"To bring such declarations within this principle, generally, they must be contemporaneous with the main fact to which they relate. But this rule is by no means of universal application. In Rawson v. Haigh, 2 Bingham, 99, a debtor had left England and gone to Paris, where he remained. The question was whether his departure from England was an act of bankruptcy, and that depended upon the intent by which he was actuated. To show this intent, a letter written in France, a month after his departure, was received in evidence. Upon full argument, it was held that it was properly received. Baron Park said: 'It is impossible to tie down to time the rule as to the declarations. We must judge from all the circumstances of the case. We need not go the length of saying that a declaration, made a month after the fact, would, of itself, be admissible; but if, as in the present case, there are connecting circumstances, it may, even at that time, form a part of the whole res gestæ.' Where a peddler's wagon was struck and the peddler injured by a locomotive, the Supreme Court of Pennsylvania said: 'We cannot say that the declaration of the engineer was no part of the res gestæ. It was made at the time—in view of the goods strewn along the road by the breaking up of the boxes—and seems to have grown directly out of and immediately after the happening of the fact.' The declaration was held to be 'a part of the transaction itself.' In the complexity of human affairs, what is done and what is said are often so related that neither can be detached without leaving the residue fragmentary and distorted. There may be fraud and falsehood as to both; but there is no ground of objection to one that does not exist equally as to the other. To reject the verbal fact would not unfrequently have the same effect as to strike out the controlling member from a sentence, or the controlling sentence from its context. The doctrine of res gestæ was considered by this court in Beaver v. Taylor, 1 Wall. 637, 17 L. Ed. 601. What was said in that case need not be repeated. Here the principal fact is the bodily injury. The res gestæ are the statements of the cause made by the assured almost contemporaneously with its occurrence, and those relating to the consequences made while the latter subsisted, and were in progress. Where sickness or affection is the subject of inquiry, the sickness or affection is the principal fact. The res gestæ are the declarations tending the show the reality of its existence, and its extent and character. The tendency of recent adjudications is to extend, rather than to narrow, the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results. There is none which rests on a more solid basis of reason and authority."

"Where an offense is the termination of a continuous transaction, it is admissible to show the entire train of connected facts leading up to and forming part of the preparation for the commission of the offense, whether consisting of conduct, declarations, or other occurrences." 24 Am. & Eng. Ency. Law, 675, and note 1; State v. Prater, 52 W. Va. 132, 43 S. E. 230; Hall v. State, 48 Ga. 607, 608; Eagon v. Eagon, 60 Kan. 697, 706, 57 Pac. 942; Chicago & E. Ry. Co. v. Cummings, 53 N. E. 1026, 24 Ind. App. 192; Pinney v. Jones, 64 Conn. 545, 30 Atl. 762, 42 Am. St. Rep. 209; Com. v. Trefethen, 157 Mass. 180, 31 N. E. 961, 24 L. R. A. 235; Jordan v. State, 81 Ala. 20, 30, 1 South. 577.

It once appearing that the stamps, upon which the proof had been raised so as to defraud the government of its revenue, were used

by the plaintiffs in error in the conduct of their business, and by them used at such increased proof, were the same stamps purchased in the states of Illinois, Kentucky, and Indiana, in the names of the companies alleged by the government to have been fraudulently used by said plaintiffs in error for such purpose, then, manifestly, every fact and circumstance tending to. throw light upon the issue of such stamps to the said last-named companies became material, and was so related to the main transaction by which the government was defrauded as to constitute the same a part of the unlawful act of which the government complained; and, upon this condition so appearing, the lower court properly declined to direct the jury to disregard the evidence that had been admitted conditionally upon the proof of the commission of the corpus delicti, or of the connection of the defendants one with another. To maintain the contention of the plaintiffs in error in this respect would be to place them in the position of objecting to the government's developing a fraud upon its revenue to which they themselves were, from their standpoint, innocent parties. In this case, while we are inclined to think the authorities abundant to have justified the lower court in admitting as a part of the res gestæ any of the declarations or admissions that may have been made by the defendants in connection with the issuance and use of the stamps alleged to have been purchased for the purpose of committing the fraud upon the government, still we do not find it necessary to pass definitely on that question, as it is not clear from the record that such declarations were admitted. We are convinced, however, and that is all that is necessary to be determined for the purposes of this case, that the fact of the purchase of such stamps, and all the circumstances connected therewith, including the acts, conduct, and transactions of any of the defendants, acting either as individuals or in the name of any or all of said companies, as well in the issue as in the subsequent use of said stamps, is admissible in evidence against the plaintiffs in error, who either as individuals, or by means of the corporations owned and operated by them in North Carolina, appear to have fraudulently received and unlawfully used the said stamps in the conduct of their business to defraud the government.

Many of the exceptions relate to the admission of evidence that was for the moment apparently applicable to one or more of the defendants in the indictment or on trial, and not to them all. This is almost inevitable where persons are jointly indicted and tried, and particularly in a case like the one under consideration, where the commission of the offense, or proof of the corpus delicti, depended on the establishment of such a variety of different facts, covering a long period of time, and widely separated one from the other. It was, of course, in order to make such evidence avail or material, necessary to connect the same with or show its pertinency to the case of one or more of the defendants; but it was not necessary that a particular fact in proof should be shown to be applicable to all of the defendants, its bearing upon the whole case being apparent. An election of the defendants to be tried separately, the granting of which would have been in the discretion of the trial court, would have lessened

the embarrassments arising from this condition. But no such motion was made; and we are convinced that the trial court committed no error in the particulars complained of, of which the defendants under trial have any just cause of complaint. The question of the conduct of trials, and the time and manner of the introduction of evidence, is a matter largely within the discretion of the trial judge; and while in this case the exceptions taken were many, and involved nearly every conceivable phase that could likely arise, still, as to most of the objections, they presented no questions of serious difficulty, the same arising only by reason of the trial of several persons together, and the effort, first, to show the commission of the crime, and then the connection of the defendants with such crime. As illustrative of the embarrassment arising from the joint indictment of all the defendants and the trial of three of them, the plaintiffs in error by two of their exceptions say, first, that it was error to prove that the absent defendant J. T. Sprinkle was a boy only 19 years of age; second, that another of the absent defendants, H. C. Sprinkle, who was the ostensible owner of the Oak Grove and Milton Companies, was a young man who, in point of fact, gave no attention to the businesses, and did not appear to be engaged in or about their conduct. On first view, each of these inquiries might appear irrelevant; but in the prosecution, when the government's entire case was based upon the fact that the five defendants named in the indictment were jointly engaged in defrauding the government and were using the names of the three North Carolina companies to more effectually accomplish their purpose, and that the Kentucky, Indiana, and Illinois companies were used for a like purpose, one of the defendants, J. T. Sprinkle, a young man 19 years old, a son of the plaintiff in error B. F. Sprinkle, being the person engaged in the conduct of the nonresident companies, as well as the apparent owner of one of the North Carolina companies, and H. C. Sprinkle, the apparent owner and proprietor of the remaining two North Carolina companies, the fact of the age of one or both of these absent defendants, their relation to the plaintiffs in error, B. F. Sprinkle, and of the improbability of either of them being thus largely engaged in business, and that the one in North Carolina gave little or no attention to the two companies ostensibly owned and operated by him, became matters of material moment, and the jury had a right to know the connection of the parties and companies, and to draw proper inferences from such circumstances.

Exceptions reserved in connection with the admission of evidence also present the question as to whether the instructions, rules and regulations prescribed by the Commissioner of Internal Revenue, and properly applicable to those engaged in the business of the plaintiffs in error, and in force at the time of the commission of the offense alleged against them, were improperly admitted as evidence to the jury. Sections 321 and 3291 of the Revised Statutes [U. S. Comp. St. 1901, pp. 186, 2132] authorize the Commissioner of Internal Revenue to prescribe such instructions, rules, and regulations, and pursuant to which those offered in evidence, revised April 5, 1901, were

promulgated; and there was no error in their admission as evidence, though there was no necessity for their formal introduction, they being matters of which the courts of the United States take judicial notice. This was expressly decided by the Supreme Court in passing on the necessity of the introduction of certain rules and regulations of the interior department in Caha v. United States, 152 U. S. 212, 14 Sup. Ct. 513, 38 L. Ed. 415; the court citing the following decisions as bearing upon the general question: United States v. Teschmaker, 63 U. S. 392, 405, 16 L. Ed. 353; Romer v. United States, 68 U. S. 721, 17 L. Ed. 627; Armstrong v. United States, 80 U. S. 154, 20 L. Ed. 614; Jones v. United States, 137 U. S. 202, 11 Sup. Ct. 80, 34 L. Ed. 691; Knight v. United States Ass'n, 142 U. S. 161, 169, 12 Sup. Ct. 258, 35 L. Ed. 974; Jenkins v. Collard, 145 U. S. 546, 12 Sup. Ct. 868, 36 L. Ed. 812.

2. The several exceptions to the action of the lower court in refusing to give to the jury instructions asked for by the plaintiffs in error, together with their assignments of error covering such exceptions, have been fully and carefully considered by the court; and our conclusion is that said instructions, which in many instances raise but the same questions covered by the exceptions taken to the rejection and admission of evidence, and in others matters not justified by the evidence, were one and all properly refused; that the court's charge, to which the plaintiffs in error did not except, fully and fairly submitted the case to the jury; and that said plaintiffs in error have no just cause of complaint, either because of the instructions refused or the charge given by the court.

3. The plaintiffs in error excepted to the action of the lower court in overruling their motion made for a new trial. This ruling is not the subject of review by this court. Blitz v. United States, 153 U. S. 308, 312, 14 Sup. Ct. 924, 38 L. Ed. 725; Wheeler v. United States, 159 U. S. 523, 16 Sup. Ct. 93, 40 L. Ed. 244; Addington v. United States, 165 U. S. 184, 17 Sup. Ct. 288, 41 L. Ed. 679.

4. The plaintiffs in error also excepted to the action of the lower court in entering judgment against them upon the verdict of the jury. This is a writ of error, which presents for consideration errors of law properly presented by a bill of exceptions or arising upon the record. Bucklin v. United States, 159 U. S. 680, 682, 16 Sup. Ct. 182, 40 L. Ed. 304, 305; Ætna Life Ins. Co. v. Ward, 140 U. S. 76, 91, 11 Sup. Ct. 720, 35 L. Ed. 371; Foster's Fed. Pr. § 496. No motion or request was made that the jury be instructed to find for the defendants, or either of them, which motion would, if made, overruled, and properly excepted to, have left open to this court to consider whether there was any evidence to sustain the verdict, though not to pass upon its weight or sufficiency. Wiborg v. United States, 163 U. S. 632, 658, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; Humes v. United States, 170 U. S. 212, 18 Sup. Ct. 602, 42 L. Ed. 1011; Clyatt v. United States, 197 U. S. 207, 221, 25 Sup. Ct. 429, 49 L. Ed. 726. Being of the opinion, after maturely considering all of the assignments of error, as well those particularly passed upon as those not in terms enumerated and referred to herein, that no error

of law has been committed of which the plaintiffs in error can complain, and that the facts, of which the jury was the judge, fully warranted their finding, the exception taken to the action of the lower court in entering judgment is overruled.

The action of the lower court, being without error, will be, and is hereby, in all respects affirmed.