CHARLEY THOMPSON v. THE STATE.

No. 13524.   Delivered October 29, 1930.
Rehearing denied January 14, 1931.
Reported in 33 S. W. (2d) 1067.

The opinion states the case.

*Scott, Casey & Hall* of Marshall, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, ninety-nine years in the penitentiary.

A meeting was in progress at a negro church. A white man, Keating, had carried negroes to this meeting and was waiting to

take them home. Deceased, also a white man and constable of the precinct, came to the place. Another white man, Mims, was also there. The rest of the crowd were negroes. Deceased undertook to take a pistol from one Castleberry who resisted and attempted to draw a pistol and was shot by deceased. The brothers of Castleberry rushed up and a general fusillade began. According to the testimony of Keating, appellant ran up at this juncture behind deceased and shot him in the back, saying: "They killed my brother too, the G—d d—n white s— of b—s, *make away with all of them.*" Shots were aimed at Keating also who tried to get away and begged the negroes not to shoot him. Deceased had fallen, but was breathing and Keating started toward him: He testified that at this juncture the negroes commenced holloing at him, and one of them said "Where are you going, you had better stop and go back, you white s— of a b—, we will fix you like we did him; we will make away with you." About this time Keating said that Robert Castleberry ran to deceased, stomped him in the breast, beat him in the head with a plank, and started at witness, threatening to "Bust his G—d—brains out." The defense was an alibi. Appellant had several witnesses who swore they were with him at a truck on the opposite side of the church from the scene of the shooting, at the time same took place; also others who swore that they were present at the shooting, saw those who took part therein, but did not see appellant there, and did not see him shoot. Appellant also introduced Mims, the third white man present at the shooting. This witness testified after deceased shot Castleberry, a negro shot deceased in the back, and kept on shooting, and that he saw no one else shoot deceased. Asked by defense counsel to look at appellant and state if he was one of the negroes who did that shooting, the witness replied "Looked like him to me." In rebuttal the State introduced a witness who said that at the time of the shooting, he was eight or ten feet from the truck on the opposite side of the church from the scene of the shooting and saw the parties who had testified to appellant's presence there at said time,—but he did not see appellant there.

There are four bills of exception. The first complains of the admission of testimony of the details of the meeting, conversation and acts of Castleberry, the negro who was shot, and deceased just prior to the shooting of deceased, and that at once after deceased shot Castleberry, a brother of the latter ran up and began shooting at deceased. This bill is qualified by the statement of the trial

court that this testimony led up to the shooting by appellant and was necessary in developing the res gestae. We think the testimony admissible.

The next bill presents objections to testimony showing that the negroes or some of them, were shooting at witness Keating and threatening him, and that after deceased fell a brother of Castleberry "stomped" deceased in the breast, beat him over the head with a plank, and threatened Keating. The objection made was that the testimony failed to show any conspiracy or acting together between appellant and the other negroes, or that appellant was present or participated in the difficulty, and that what took place after the deceased was shot was immaterial and irrelevant. The presence of appellant and his participation in the shooting were sworn to and were issues fully and fairly presented to the jury in the main charge, and a special charge given at appellant's request. If the jury believed the State's testimony, appellant voluntarily made himself a party to a shooting going on between the deceased and a brother of the negro shot by deceased,—and that appellant shot deceased in the back; also that he made himself a co-conspirator and coactor with those who thereafter assaulted or attempted to kill Keating or deceased,—by the statement attributed to him by Keating, "They killed my brother, too, the G—d d—n s— of b—s, *make away with all of them.*" Keating was a white man then aiding deceased, another white man, to take a pistol from Castleberry, a negro. While the shooting at Keating was going on, according to his testimony, some one unnamed called to him and said: "We will fix you like we did him; we will make away with you." This coming from the crowd of negroes, being in language identical with that previously used by appellant, and evidently being a statement made by one who identified himself with those who had "fixed" deceased, might with propriety have been regarded by the jury as coming from appellant. Regardless of this conjecture however, we think appellant's prior statement enough to make him a party to any act or word of others thereafter, which aptly tended to show intent or effort on their part to make away with deceased or Keating.

The bill complaining of the testimony of Huse Williams sets out the reception of no hurtful testimony, either act or word, but if so, same would be controlled by what we have said in our opinion expressed in disposing of the preceding bills of exception. So also of the remaining bill which sets out the refusal of the court below

to give a special charge telling the jury they could not consider against appellant testimony of acts and words of other parties done and said after deceased was shot. If we are correct in holding that appellant's statements made him a party to what was thereafter said and done to these white men by others of said negroes in an effort to make away with them, it would follow that the charge under discussion was correctly refused.

No error appearing in the record, the judgment will be affirmed.

*Affirmed.*

HAWKINS, J., absent.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant insists that we were in error in holding that certain evidence was admissible on the theory that a conspiracy existed between appellant and other parties engaged in the altercation. Deceased, an officer, attempted to take a pistol from one Andrew Castleberry who resisted arrest and was killed by the officer. Brothers of the deceased Castleberry then engaged the officer in a pistol battle. Appellant entered the fight shooting the officer in the back. It appears that a short time before officers had killed a brother of appellant. When he appeared upon the scene of the present transaction, and just before firing the shot appellant said, "They killed my brother, the G— d— white s— of b—s, make away with all of them, kill them all." It was necessary to develop the killing of Andrew Castleberry by deceased because it was a part of the transaction out of which the killing of the officer by appellant grew. His remark evidenced animosity not only towards the deceased officer but against other parties present acting with him. The learned trial judge in approving the bills of exception complaining of the admission of certain testimony appended the following explanation.

"* * * from the time the officer attempted to take the pistol from the negro which he killed until the time the negroes were attempting to get hold of the witness Keating, was only a short space of time. It was one continuous difficulty from the time the officer took hold of the negro killed by him until Keating left. In this row there were various numbers of negroes engaged. Statements, acts and declarations of the parties were admitted in evidence by me as part of the res gestae."

On the point of conspiracy, it may be admitted that the evidence does not show a conspiracy between appellant and the Castleberrys

in the sense that they had previously agreed and had an understanding that the officer would be killed. What was said by Judge White in the case of Cox, et al. v. State, 8 Tex. Cr. App. 254, is so pertinent under the facts that we quote it again. (See Miller v. State, 112 Tex. Cr. R. 194, 15 S. W. (2d) 1043.) After referring to our statute defining "principals" there follows this language.

"To our minds, a great deal of the trouble, confusion, and discussion with regard to conspiracy, where two or more are charged with the commission of crime, might and can be obviated by keeping in mind these statutory provisions. If the parties can be identified at the time and place as joint participants in the commission of the crime, why the necessity of going behind that fact to establish a conspiracy to do the act already accomplished, and for which the law denounces them as principal offenders and liable to punishment as such? Why want a better predicate, or any further evidence even of a conspiracy, if their presence and guilty participation is already established? To us it seems too plain to admit of argument, that, when two or more are found acting together with unlawful intent in the commission of an offense, the common design and acting together makes them ipso facto conspirators,—endows them as a body with the attribute of individuality,—merges the conspiracy to do the act in the act itself; and that the previous acts and declarations of each or any such principal offenders in pursuance of the agreed plan, and tending to throw light upon it or the motive or intent with which it was committed, is and should be received as legal and admissible evidence against each and all, whether indicted, prosecuted, and tried jointly or separately."

When appellant appeared upon the scene of action he at once participated in the Castleberrys' efforts to kill the officer and by his advice to kill all the "white s— of b—" made admissible all the testimony of which he complains.

Believing our former opinion made proper disposition of the case, the motion for rehearing will be overruled.

*Overruled.*