**FRITTS v. UNITED STATES.**
No. 1258.

Circuit Court of Appeals, Tenth Circuit.
Dec. 9, 1935.

C. L. McArthur, of Ada, Okl. (E. W. Kemp, of Ada, Okl., on the brief), for appellant.

Earl Pruet, Asst. U. S. Atty., of Muskogee, Okl. (Cleon A. Summers, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

Appellant and Fred Ferguson were indicted for (1) possessing an unregistered still, (2) carrying on the business of a distiller without bond, (3) working at a still not carrying the sign of "Registered Distillery," (4) fermenting mash on premises other than an authorized distillery, and (5) possessing liquor upon which no tax was paid. Ferguson pled guilty. Fritts stood trial and was convicted.

1. The trial court denied a motion for an instructed verdict and this ruling is the principal error assigned. We have read the testimony and conclude that the circumstances point strongly to appellant's guilt, and that, unexplained as they were, they are not as consistent with any reasonable hypothesis of innocence as with guilt. Fritts moved from his farm to town when school opened in September or October, leaving Ferguson, a hired man, living in a tent on the farm. Fritts went out to the farm frequently, and at least once hauled out shorts, bran, cottonseed meal and two sugar sacks filled with something. On December 13 the officers raided the farm, and in a locked sheet iron building forty steps from the house, they found a 150-gallon copper still, set up and warm. The still was full of mash; bran and corn chops in sacks—materials used in making mash—and 50 gallons of liquor were found in the building. The water supply came through a buried pipe connected with a pump in the dwelling house. The pipe had been buried long enough that weeds and grass had grown over the trench. There was a 300-gallon water tank in the still house. A beaten path led from the dwelling to the still house. The still house was in an enclosure of chicken and barbed wire as high as a man could reach, and forty or fifty feet square. The brick in the still was well-set, smoked up, and looked as if it had been there a year. There were piles of ashes, some of which looked as if they had been there quite a while. The hired man had no key to the building. After Ferguson was arrested, Fritts frequently, in conversation with Ferguson's father "wondered if the boy would

get scared and tell anything that would implicate him." Fritts arranged for the bond of young Ferguson, a circumstance hardly consistent with counsel's theory that the hired man was surreptitiously running a still on appellant's farm. Parnell v. United States (C.C.A.10) 64 F.(2d) 324.

██ Fritts did not take the stand, nor offer any other testimony, to deny or explain these incriminating circumstances.

There are other circumstances; unexplained and undenied, they leave us convinced that this is the all too typical case of a farmer operating a still and shifting the blame to the hired man. Counsel suggest that the enclosure might have been a turkey pen, as turkeys had been seen in there sometime before, but there were no signs of turkeys having been there recently when the raid was made. Certainly the pipe to the pen was laid while Fritts lived on the farm. Counsel suggest that the hired man might have built the still of old smoked up bricks, financed and operated it without knowledge of Fritts; that it might have happened that each time Fritts was at the place, the wind might have been from the south which would have prevented Fritts from smelling the mash. One by one, counsel offer explanations, some of them plausible, for the various circumstances. If these explanations had been made by Fritts to the jury, instead of his counsel to us, the jury might have returned a different verdict. Or, with their knowledge of farms and farmers, they might not have believed that the pipe was laid in a trench to water turkeys; or that turkeys could be kept in a pen without disturbing the grass or leaving some traces of their occupancy; or that the hired man would have undertaken to operate a still, without the key to the still house, forty steps from the residence of an owner who comes out frequently, trusting to a friendly wind to avoid detection and apprehension. The jury is the body to pass on the reasonableness of such explanations as now are offered us. We conclude the evidence was sufficient to go to the jury.

██ 2. The court charged the jury that if Fritts and his hired man were acting under a preconcert or understanding, the act of one would be the act of the other. Exception was taken because there was no evidence of an agreement between the two. But there was ample evidence that they were jointly engaged in the commission of the offenses. Lennon v. United

646

States (C.C.A.8) 20 F.(2d) 490. Besides, no proof was received which was not competent against Fritts if Ferguson had not been jointly charged, so the instruction, if superfluous, was at least harmless.

3. Complaint is made that the trial court participated too actively in the examination of the witnesses. No objection or exception was taken at the trial; moreover, it has been aptly said that a federal judge is not a mere moderator at a town meeting; he has a right to aid in eliciting the truth. He should not, either in interrogating witnesses, ruling on objections, or charging the jury, become an advocate for one side or the other. But the trial judge here did not offend this rule; his participation was in an effort to get all the material facts before the jury in an orderly way. Hargrove v. United States (C.C. A.8) 25 F.(2d) 258.

4. Other errors are assigned; we have examined them, and find them to be without merit. They do not warrant specific treatment.

The judgment is affirmed.