## GOOCH v. UNITED STATES.
### No. 1305.

Circuit Court of Appeals, Tenth Circuit.
March 9, 1936.

W. F. Rampendahl, of Muskogee, Okl. (Chas. S. Wheeler and E. M. Frye, both of Muskogee, Okl., on the brief), for appellant.

Cleon A. Summers, U. S. Atty., of Muskogee, Okl. (Charles N. Champion and Earl Pruet, Asst. U. S. Attys., both of Muskogee, Okl., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Gooch was charged by indictment containing two counts with violations of 18 U.S.C.A. § 408a (Act June 22, 1932, § 1, 47 Stat. 326, as amended by Act May 18, 1934, 48 Stat. 781).

The first count charged that Gooch, on October 25, 1934, at Paris in the state of Texas, did unlawfully "seize, kidnap, abduct and carry away and hold" R. N. Baker and H. R. Marks, peace officers in the state of Texas, for the purpose of preventing his arrest by such peace officers, and did transport Baker and Marks against their will, in interstate commerce, by means of an automobile, from Paris, Texas, to a point in Pushmataha county, Oklahoma.

The second count charged the same facts as the first count and further alleged that Gooch, and one Ambrose Nix, who was acting in concert with Gooch in the commission of the offense charged, did bodily harm to Baker, and that Baker was suffering from such bodily harm at the time he was liberated by Gooch in Oklahoma.

Gooch pleaded guilty to both counts of the indictment, but the court refused to accept the pleas of guilty and submitted both counts to a jury. It returned verdicts of guilty on both counts and the court sentenced Gooch to be hanged.

The Supreme Court has answered in the affirmative the following certified questions:

"1. Is holding an officer to avoid arrest within the meaning of the phrase, 'held for ransom or reward or otherwise,' in the act of June 22, 1932, as amended May

18, 1934 (48 Stat. 781), 18 U.S.C.A. § 408a?

"2. Is it an offense under section 408a, supra, to kidnap and transport a person in interstate commerce for the purpose of preventing the arrest of the kidnaper?"

See Gooch v. U. S., 56 S.Ct. 395, 80 L.Ed. ——, decided February 3, 1936.

It follows that the indictment charged offenses against laws of the United States.

The facts established by the evidence are these:

Shortly before 3 o'clock a. m., November 26, 1934, Gooch and Nix came to a gasoline filling station at Paris, Texas, in an automobile to have a tire repaired.

Baker and Marks, police officers of Paris, in the performance of their duties, were reconnoitering in a police patrol car, and passed by the filling station. They there observed an automobile with a tire off, and in the filling station, one Williams repairing a tire with Gooch standing by apparently aiding him. In a few minutes they returned to the filling station, stopped, further observed the automobile and entered the station. In the automobile were articles of food and clothing and a small sack of money, three sawed-off automatic shotguns, two rifles and four pistols.

When the officers entered the station, Gooch was leaning over and when he saw the officers he straightened up. Baker inquired as to the ownership of the automobile and Gooch stated it belonged to him. Baker requested Gooch to let him see the title papers. Gooch stated he had bought the car in Arkansas and did not have the title papers with him. Whereupon, Baker motioned to Marks and Marks went around on the side of Gooch opposite to Baker. Gooch attempted to draw his gun and at the same time grappled with Marks. Baker then attempted to draw his gun, but Nix covered Baker with his gun and said, "hands up." As Baker attempted to draw his gun it caught and fell to the floor. Nix pushed his gun into Baker's back and shoved him into a glass show case which broke, and the broken glass inflicted a deep wound in Baker's hip. In the meantime Gooch and Marks continued to grapple, each seeking to draw his gun, but Gooch drew his gun first and took Marks' gun from him. Gooch and Nix immediately forced Baker and Marks out of the filling station and into the rear seat of the patrol car. Gooch then transferred the articles in their automobile to the front seat of the patrol car. Nix then took the driver's seat in the patrol car and Gooch sat next to him and covered Baker and Marks with one of the shotguns. Gooch told Williams to continue repairing the tire. Gooch and Nix, the latter driving and the former covering Baker and Marks with the shotgun, transported the police officers from Paris to a point in Pushmataha county, Oklahoma, where, between 9 and 10 o'clock p. m., November 26, they released them.

Gooch and Nix threatened the officers during the trip and directed them to remain where they were released until morning and said if they failed so to remain they would be in great danger.

Baker and Marks remained where they were released three or four hours and then made their way to a place called Snow, Oklahoma. There they secured transportation to Antlers, Oklahoma, where they telephoned the chief of police of Paris who sent an automobile for them. Baker's wound bled and pained him severely during the time he was being transported by Gooch and Nix. On Baker's return to Paris he was taken to a hospital where the wound was dressed and closed by four stitches.

On reaching Antlers, Baker and Marks notified the sheriff of Pushmataha county. Gooch was apprehended and Nix was killed resisting arrest on December 23, 1934.

Gooch offered no evidence at the trial.

Counsel for Gooch contend that the wound was inflicted on Baker prior to the kidnaping and by Nix alone who was not acting jointly with Gooch.

The evidence fully justifies the inference that Gooch and Nix were associates in crime, and that they had expressly or impliedly agreed to act together to avoid detection and arrest, in other words, to use the common expression, to shoot it out with officers to avoid arrest.

Furthermore, when Gooch reached for his gun and grappled with Marks, Nix immediately covered Baker with his gun and caused the physical injury to Baker. Gooch and Nix acted in concert from the moment Gooch reached for his gun to the time the officers were released and the crime fully consummated; and the act of one in furtherance of the crime, although a

conspiracy was not charged, was in law the act of the other.[1]

■ It was sufficient if the evidence showed concert of action, that Gooch and Nix were acting with a common purpose or design to commit an unlawful act;[2] and it was not necessary to show there was a previous agreement between them to commit the particular act.[3]

In Territory v. McGinnis, 10 N.M. 269, 61 P. 208, 211, the court said:

"We are also of the opinion that proof of the relations of the defendant with Franks and Ketcham was admissible because of its tendency to show, when considered with the other facts in evidence, a deliberate agreement among them to oppose force to any attempt to apprehend them; but it was not requisite, in our view of the case, that the jury should be convinced of a preconcerted plan of forcible opposition prior to the time when the felons were discovered in their camp. The common design might well have been suggested and assented to after the arrival of the posse at the scene of the homicide. Nor was verbal communication necessary. Acts are often more eloquent than words. Especially is this true where the minds of the parties have been

prepared by a common experience resulting in an identity of interest or motive. Under such circumstances, a single gesture or other act, as the raising of a gun, might be sufficient to conclude a perfect understanding instantly."

■ Since a person, acting with intent to do an unlawful act, may be guilty of a wrong he did not intend, where it is one not requiring a specific intent, so if two or more persons combine to do an unlawful thing, and the act of one of them, proceeding according to the common design, terminates in a criminal result not intended, which requires no specific intent, all are liable for such result.[4]

Here Gooch and Nix, acting in concert, undertook by means of deadly weapons and force and violence to overpower and seize Baker and Marks and it is immaterial whether they intended the injury which Baker suffered. The injury was the direct result of the attempt to seize Baker and was not due to an independent act of Nix extraneous to the criminal act they were jointly committing. Both are responsible therefor.

■ While kidnaping at common law means to forcibly abduct a person and to carry him from one state into another state,[5] it

[1] St. Clair v. United States, 154 U.S. 134, 149, 14 S.Ct. 1002, 38 L.Ed. 936; Sprinkle v. United States (C.C.A.4) 141 F. 811, 815; Davis v. United States (C.C.A.5) 12 F.(2d) 253, 257; United States v. Gooding, 25 U.S. (12 Wheat.) 460, 469, 6 L.Ed. 693; Tuckerman v. United States (C.C.A.6) 291 F. 958, 970; Gardner v. State, 121 Tenn. 684, 120 S.W. 816; Jones v. State, 174 Ala. 53, 57 So. 31, 32; Lennon v. United States (C.C.A. 81, 20 F.(2d) 490, 494; Fritts v. Unit States (C.C.A.10) 80 F.(2d) 644, decided December 9, 1935; Morris v. State, 146 Ala. 66, 41 So. 274.

In the case last cited the court said: "When by prearrangement, or on the spur of the moment, 'two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator.'"

[2] Commonwealth v. Cline, 213 Mass. 225, 100 N.E. 358; People v. Van Tassel, 156 N.Y. 561, 51 N.E. 274; Thompson v. State, 116 Tex.Cr.R. 460, 33 S. W.(2d) 1067, 1069; State v. Foster, 172 N.C. 960, 90 S.E. 785, 787; Ex parte Hayes, 6 Okl.Cr. 321, 118 P. 609, 612; State v. Strait (Mo.Sup.) 279 S.W. 109, 113; State v. Priebe, 198 Iowa, 609, 199 N.W. 276, 277.

[3] People v. Van Tassel, supra; Thompson v. State, supra; Territory v. McGinnis, 10 N.M. 269, 61 P. 208, 211.

[4] Bishop on Criminal Law (9th Ed.) Vol. 1, § 636; United States v. Ross, Fed.Cas.No.16,196, 1 Gall. 624; Brennan v. People, 15 Ill. 511, 516, 517; State v. Johnson, 7 Or. 210, 211, 212; People v. Vasquez, 49 Cal. 560, 561. See, also, State v. Beck, 42 Nev. 209, 174 P. 714; Territory v. McGinnis, 10 N.M. 269, 61 P. 208, 211, 212; Noble v. People, 23 Colo. 9, 45 P. 376, 378.

[5] In State v. Harrison, 145 N.C. 408, 59 S.E. 867, 870, the court said:

" 'The word "kidnap" has a technical meaning. It is derived from the common law, and must be interpreted according to its technical meaning at common law; and its meaning at the common law,and under our statute is to take and carry away any person, forcibly or fraudulently, beyond the boundaries of the state.' * * * Blackstone and some other English authorities define kidnapping to be the 'forcible abduction or stealing away of a man, woman, or child from their own country and sending them into another.' "

See, also, Words and Phrases, First Series, vol. 5, p. 3928.

involves the element of seizing the victim by force or fraud and against his will.

Webster's New International Dictionary, (2d Ed.) gives the derivation of the word as follows: "*kid* a child + E. dial. *nap* to seize, to grasp."

Furthermore the statute uses the word "seized";[6] and each count of the indictment charged that Gooch "did * * * seize, kidnap, abduct, carry away and hold * * * Baker and * * * Marks."

■ We conclude the seizure was a part of the offense, that the injury to Baker occurred during the commission of the offense, and that both Nix and Gooch were responsible therefor.

Counsel for Gooch further contend that the attempted arrest was illegal and that Gooch and Nix were justified in resisting the officers.

■ They assert the officers were not justified in arresting Gooch and Nix without a warrant unless they had satisfactory proof that Gooch and Nix had committed a felony, and unless it appeared they were about to escape and there was insufficient time to procure a warrant. Conceding this, we think all of the attendant circumstances justified an arrest without a warrant.

■ But be that as it may, and assuming the attempted arrest was illegal, that did not justify Gooch and Nix in kidnaping the officers by force and violence and transporting them in interstate commerce.

While a person has the right to resist an unlawful arrest, unnecessary force may not be resorted to, nor means of resistance adopted which are disproportionate to the efforts made to take him into custody.[7]

Before the officers attempted an arrest, Gooch, apparently fearful of arrest, reached for his gun and grappled with Marks. Nix immediately covered Baker with his gun. Gooch and Nix were the aggressors and the officers were on the defensive. Nothing that the officers did warranted Gooch and Nix in kidnaping them and transporting them in interstate commerce.

■ We conclude the evidence supports the charge in the second count.

The judgment is affirmed. Since the day fixed for the execution of the judgment and sentence has passed, the action is remanded with directions that the trial court cause the defendant to be brought before it and that it then fix a day for the execution of the judgment and sentence.

---

6 It reads in part "any person who shall have been unlawfully *seized*, confined, inveigled, decoyed, kidnaped, abducted, or carried away by any means whatsoever." (Italics ours.) 18 U.S. C.A. § 408a.

7 West v. Cabell, 153 U.S. 78, 86, 14 S.Ct. 752, 38 L.Ed. 643; State v. Gum, 68 W.Va. 105, 69 S.E. 463, 33 L.R.A.(N. S.) 150; Commonwealth v. Crotty, 10 Allen (Mass.) 403, 87 Am.Dec. 669; Miers v. State, 34 Tex.Cr.R. 161, 29 S.W. 1074, 53 Am.St.Rep. 705; Porter v. State, 124 Ga. 297, 52 S.E. 283, 2 L.R.A.(N.S.) 730; Creighton v. Commonwealth, 84 Ky. 103, 4 Am.St.Rep. 193.