The State of Kansas, *Appellee*, v. Ora Turner,
*Appellant.*

No. 16,891.

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Evidence Procured by Intimidation—Involuntary Confessions—Self-incriminating Testimony.* At a trial on the charge of murder, neither the rule excluding proof of an involuntary confession nor that relating to self-incrimination forbids evidence that the defendant produced from a hiding place a revolver similar to that with which the homicide was known to have been committed, although such production was brought about by intimidation.

Appeal from Rice district court; JERMAIN W. BRINCKERHOFF, judge. Opinion filed June 11, 1910. Affirmed.

*D. A. Banta*, and *W. W. Stahl*, for the appellant.

*Fred P. Green*, county attorney, for the appellee; *Samuel Jones*, and *Foley & Hopkins*, of counsel.

The opinion of the court was delivered by

MASON, J.: Ora Turner was convicted of murder in the first degree and appeals. The questions presented are whether error was committed in the refusal of instructions and in the admission of evidence. The court gave one instruction regarding the effect of circumstantial evidence in the exact language of the second paragraph of the syllabus in *Carl Horne v. The State of Kansas*, 1 Kan. 42, and another substantially following what was said in *The State v. Furney*, 41 Kan. 115, 122, to be the correct rule. The instructions refused were practically but elaborations of the principles embodied in those given, and their refusal can not be regarded as material error.

The body of Roy Snyder, with whose murder the defendant was charged, was found on the highway, his death having resulted from several bullet wounds.

Circumstances tended to indicate Turner as the murderer, and jealousy as the motive. Two bullets were recovered. They weighed substantially 149 grains each, and showed that they had been discharged from a barrel rifled with six grooves. Persons familiar with the subject said that the only firearm that would mark a bullet of that weight in such a manner was what is known as a Colt's 38-caliber "Police Positive" revolver, and an investigation was begun to learn whether a weapon of that description was owned in the neighborhood. It was learned that one had been bartered, about two weeks before the homicide, to Turner's cousin, who upon inquiry said that he in turn had traded it to the defendant. The sheriff and several other persons then went to the defendant and asked about the revolver he had obtained from his cousin. He at first denied any knowledge of it, but upon being pressed finally procured a pitchfork, and, leading the party into a grove where it had been buried, dug it up and gave it to the sheriff. The state was permitted to show the fact of finding the revolver and a part of what the defendant had said in the conversation leading up to it. The admission of this evidence is complained of on the ground that it violated the rule against the use of involuntary confessions, and virtually compelled the defendant to be a witness against himself.

In stating the case to the jury one of the attorneys for the prosecution told them that the testimony would show that he had said to the defendant, before the revolver was produced: "I want you to get that gun, and if you don't do it we will have two hundred men here to search every inch of the ground, and you know when we find it what will happen, and no man can stop it." No evidence was offered that such language was in fact used, but the state must be regarded as admitting that the production of the revolver and any-

thing said about it by the defendant after his talk with this attorney resulted from fear on his part.

The only evidence that was introduced, however, of any statements made by the defendant about this matter related to conversations that took place before any threat had been made. Moreover, there was no error in its introduction for another reason. The statements attributed to the defendant were not of the nature of admissions; they consisted of denials of any knowledge of the revolver; they were exculpatory rather than incriminating, and were not within the rule applicable to confessions. (*The State v. Campbell,* 73 Kan. 688; I Wig. Ev. § 821.) One witness testified that at one time the defendant said he knew where the revolver was, but that he immediately retracted the statement.

The contention that evidence of the production of the revolver from its hiding place by the defendant should have been rejected is more serious, but the authorities support the contrary view with substantial unanimity. Some of them go so far as to justify the admission of an extorted confession, so far as it is corroborated by indisputable facts which it discloses. The only substantial difference of opinion relates to the admissibility of the confession itself. The narrow scope of the conflict and the reasoning upon which the courts have proceeded are exhibited by the following typical expressions:

"Where an involuntary confession discloses incriminating evidence which is subsequently on investigation proved to be true, or where the confession leads to the discovery of facts which in themselves are incriminating, so much of the confession as discloses the incriminating evidence and relates directly thereto is admissible. And the facts discovered in consequence of such involuntary confession may be proved. Thus in a prosecution for murder evidence of the discovery in a certain place of the remains or clothing of the deceased or of the weapon by which he was killed, with so much of an involuntary confession as relates directly to such facts, is admissible." (12 Cyc. 478.)

"A modification of the rule which excludes a confession not shown to be voluntary exists where the information derived in consequence of a confession leads to the discovery of material facts which go to prove the commission of the crime confessed. In that case, so much of the confession as strictly relates to the facts discovered and the facts themselves will be received in testimony, though the confession may be shown to be involuntary, for the reason that the discovery of the facts corroborates the truth of the confession to that extent and excludes the idea of its fabrication under undue influence, though in some jurisdictions it seems that in such case the entire confession is admissible." (6 A. & E. Encycl. of L. 551.)

"If the confession, being inadmissible because improperly procured, brings to light facts or circumstances tending to show guilt, the prosecution is not precluded from proving the facts thus disclosed by other evidence, because they were brought to light by a confession which is itself incompetent. Some cases have gone further and held that not only may the fact disclosed be proved, but that portion of the confession disclosing it. But other cases hold that while the facts may be proved the declaration accompanying it must be excluded." (3 Enc. of Ev. p. 341.)

"The main reason for rejecting confessions uttered under the influence of hope or fear is the great probability that the prisoner has been influenced by his expectation of punishment, or of immunity, to speak what is not true. If, however, the existence of extraneous facts is discovered through the statements of the accused, no reason exists for rejecting those parts of the confession which led to the discovery, and which, though not voluntarily made, have been corroborated convincingly by the facts discovered." (Underhill, Crim. Ev. § 138.)

"The object of all the care which, as we have now seen, is taken to exclude confessions which were not voluntary, is to exclude testimony not probably true. But where, in consequence of the information obtained from the prisoner, the property stolen, or the instrument of the crime, or the bloody clothes of the person murdered, or any other material fact, is discovered, it is competent to show that such discovery was made con-

formably to the information given by the prisoner.
The statement as to his knowledge of the place where
the property or other evidence was to be found, being
thus confirmed by the fact, is proved to be true, and not
to have been fabricated in consequence of any induce-
ment.    It is competent, therefore, to inquire whether
the prisoner stated that the thing would be found by
searching a particular place, and to prove that it was
accordingly so found, but it would not be competent to
inquire whether he confessed that he had concealed it
there.  .  .  .  If the prisoner himself produces the
goods stolen, and delivers them up to the prosecutor,
notwithstanding it may appear that this was done upon
inducements to confess, held out by the latter, there
seems no reason to reject the declarations of the pris-
oner, contemporaneous with the act of delivery, and
explanatory of its character and design, though they
may amount to a confession of guilt."   (1 Greenl. Ev.,
16th ed., §§ 231, 232.)

"Although confessions made by threats or promises
are not evidence, yet if they are attended by extraneous
facts which show that they are true, any such facts
which may be thus developed, and which go to prove
the existence of the crime of which the defendant was
suspected, will be received as testimony, e. g., where the
party thus confessing points out or tells where the
stolen property is, or where he states where the de-
ceased was buried, or gives a clue to other evidence
which proves the case."   (Wharton's Crim. Ev., 8th
ed., § 678.)

"Independent facts and evidence, discovered through
a confession inadmissible because impelled by hope or
fear, are not therefore to be rejected.  .  .  .   There
is some authority for saying that no part of the con-
fession, or even the fact of its having been made, can
be given in evidence to connect the defendant with the
thing discovered; on the other hand, there are statu-
tory provisions and perhaps common-law adjudications
in some of the states permitting the entire confession
to be laid before the jury when thus confirmed.  But
the better common-law doctrine in authority, and prob-
ably in reason, is that when the confession is thus
confirmed simply so much of it as led to the finding,
and, should the prisoner have been present at the
search and finding, his declarations and conduct during

this period, or his declarations when he surrenders back an article stolen, may be shown to the jury in connection with the thing itself. The finding makes the truth of so much of the confession sufficiently evident." (1 Bishop's New Crim. Proc., 4th ed., § 1242.)

"The fundamental theory upon which confessions become inadmissible is that when made under certain conditions they are untrustworthy as testimonial utterances. . . . If . . . a circumstance appears which indicates that the law's fear of untrustworthiness is unfounded, and counteracts the significance of the improper inducement by demonstrating that after all it exercised no sinister influence, the confession should be adopted. This is the theory of confirmation by subsequent facts, which has been in vogue ever since there has been any doctrine about excluding confessions. That theory is that where, in consequence of a confession otherwise inadmissible, *search is made and facts are discovered which confirm it* in material points, the possible influence which through caution had been attributed to the improper inducement is seen to have been *nil*, and the confession may be accepted without hesitation.

"This theory has always been accepted, at least in the abstract.

"It was once contended that the impropriety of the inducement to the confession tainted the facts discovered in consequence of it, and that they also, as well as the confession, should remain inadmissible. Such a doctrine needs only to be stated to expose its equal lack of logic, principle and expediency." (1 Wig. Ev. §§ 856, 859.)

So far as concerns the rule that the accused shall not be required to be a witness against himself, evidence extorted from him by intimidation stands upon the same footing as though it had been procured by force, or by any other unfair or illegal method. It has already been decided by this court that articles of which the prosecutor has obtained possession by unlawful means —for instance, by seizure without process—may be introduced in evidence over the objection of a defendant whose rights have been thus violated. (*The State v.*

*Miller,* 63 Kan. 62.) The rule authorizes the use as evidence, not only of articles taken by force, but also of those which the defendant has been coerced into delivering. The manner of their procurement, however reprehensible, will not prevent their use as evidence so long as the person against whom they are used has not been constrained by the court to produce them. A document that has been taken stealthily from the defendant's desk, or forcibly from his pocket, or that he has surrendered under a threat of personal violence, may be used against him, because its wrongful procurement creates no estoppel, and the story it tells is its own and not that of the defendant. But if he produces it in obedience to an order of the court it is incompetent, because under such circumstances his act is performed in the capacity of a witness and to admit the fruits of it as evidence would be to make use of him as a witness against himself. The distinction is thus discussed in section 2264 of volume 3 of Wigmore on Evidence:

"Documents or chattels obtained from the person's control *without the use of process against him as a witness* are not in the scope of the privilege, and may be used evidentially; for obviously the proof of their identity, or authenticity, or other circumstances affecting them, may and must be made by the testimony of other persons, without any employment of the accused's oath or testimonial responsibility. . . . This distinction has received repeated illustration and almost universal acceptance, in a variety of applications to documents and chattels obtained by search or seizure independent of testimonial process. It would apparently never have suffered any judicial doubt, but for a modern opinion, in which (in spite of a protest by a minority of the court) the seeds of a dangerous heresy were sown. In *Boyd v. United States* an order for production of documents involving self-criminating matter was properly held to be within the privilege, on the principle of par. (1), supra; but the opinion of the majority, speaking *obiter,* declared the privilege applicable also to documents obtained by officers' search or seizure, legal or illegal, irrespective of testimonial process. . . . The *obiter* expressions of opinion by the majority

. . . have led a few other courts, since the publication of that case, to adopt its erroneous view and to exclude documents obtained by seizure."

In the supplement the author adds:

"That case, however, . . . in later federal opinions, has in effect been pared down, and for practical purposes repudiated (in respect to the *obiter* statements in the majority opinion, above noted). (5 Wig. Ev. § 2264.)

The cases bearing on the admissibility in evidence of articles wrongfully obtained from the defendant are fully collected in *State v. Fuller*, 34 Mont. 12, and in notes thereto in 9 Ann. Cas. 655, and in 8 L. R. A., n. s., 762, citing an earlier note in 59 L. R. A. 465.

True, in receiving as evidence information unlawfully obtained, a court may seem by judicial sanction to encourage wrongdoing. But such is not the real aspect of the matter. The sole question under investigation in a criminal trial is the guilt or innocence of the defendant. Nothing not pertinent to that subject can be considered. Everything throwing light upon it should be admitted, unless forbidden by some rule of law. Extorted confessions are not excluded as a rebuke to those who have obtained them, but because they are regarded as of doubtful credibility. The provision of section 10 of the bill of rights that in a criminal prosecution "no person shall be a witness against himself" forbids his being compelled to testify, but does not extend so far as to prevent the prosecution from making use at the trial of information obtained from him under duress. The courts do not approve a resort to illegal means to obtain evidence. They are not indifferent to a violation of the letter or spirit of the law designed for the protection of one accused of crime. But a far-reaching miscarriage of justice would result if the public were to be denied the right to use convincing evidence of a defendant's guilt because it had been brought to light through the excessive zeal of an individual,

Railroad Co. v. Scott County.

whether an officer or not, whose misconduct must be ·deemed his own act and not that of the state.

We think it clear that no error was committed in receiving the evidence complained of. The judgment is .affirmed.