# CHARLESTON.

STATE *v.* GUM

Submitted September 13, 1910.   Decided November 1, 1910.

ASSAULT AND BATTERY—*Self Defense—Resisting Arrest—Use of Deadly Weapon.*

If an attempted arrest be unlawful, the party sought to be arrested may use such reasonable force, proportioned to the injury attempted upon him, as is necessary to effect his escape, but no more; and he can not do this by using or offering to use a deadly weapon, if he has no reason to apprehend a greater

injury than a mere unlawful·arrest. Instructions to the jury, not so limited, were properly refused.

Error to Circuit Court, Pocahontas County.

Woods Gum was convicted of assault with intent to kill, and brings error.

*Affirmed.*

*N. C. McNeil,* for plaintiff in error.

*Wm. G. Conley,* Attorney General, and *D. E. Matthews,* Assistant Attorney General, for the State.

MILLER, JUDGE:

The indictment charges that the defendant did maliciously and feloniously cut, stab and wound one John Waugh, a sergeant of the town of Marlinton, 'while the latter was attempting to place him under arrest for being drunk and disorderly, with the intent to then and there maim, disfigure, disable and kill the said Waugh.

Upon the trial, upon his plea of not guilty, the jury found the defendant guilty of unlawful, but not malicious, wounding, as charged in the indictment. Upon this verdict the court below pronounced the judgment complained of, that the defendant be confined in the penitentiary for the period of three years, at hard labor, and to be further dealt with according to law.

In his petition to this Court for the writ of error allowed him, petitioner alleges numerous errors committed on the trial, but no oral argument was made or printed brief filed on his behalf on the final hearing here. The attorney general filed a brief on behalf of the state, and the case, thus presented, was submitted for decision.

Upon the trial below there was substantially no conflict in the evidence, and there is practically but one question,·a question of law, presented by defendant's instructions to the jury numbered·three and four, rejected, presented for decision. These instructions, poorly drawn, would have told the jury, substantially, number three, that if they believe from the evidence that Waugh was attempting to arrest the defendant without a warrant or other proper authority, defendant had the

right to resist said arrest, and that they should find the defendant not guilty, unless they should find that said officer was attempting to make the arrest for the violation of the law committed in his presence or view; the fourth, that if they believed from the evidence that Waugh went upon the premises of defendant, and attempted to arrest him in his own house, without proper legal authority, by a warrant issued by a proper officer, or for some violation of law committed in his presence, he had the right to resist said arrest "in any manner he chose", and they should find the defendant not guilty.

The facts proven in brief were, that Waugh at the time of the alleged offense, at the request of defendant's wife, entered the home of defendant by the kitchen door, the witness Dennison accompanying him to the door, and being informed, first by Dennison before entering, and after entering by defendant's wife, that she wanted him to do something with defendant, because she was afraid he would do something before morning, he went on into the adjoining room where Woods was quietly sitting, and, to quote his own language, addressing the defendant, said: "I asked him what was the matter and he said, 'I wont stand what is going on in my home,' and I said, 'You had better keep quiet and go to bed and sleep this off' and he said, 'no, by God, there is a man and a woman in this room and a man and a woman in the other room and I will be God damned if I am going to stand it any longer' and I said, 'Mr. Gum, you will have to get quiet now or I will have to put you under arrest,' and he said, 'God damn you, you can't do it,' and at that I got him by the arms and I called Mr. Dennison, he was standing at the door and when he come in Mr. Gum threw his right hand up and I discovered his knife for the first time, and he said to Mr. Dennison, 'By God, you stand back' and I said to Dennison, 'look out, he will cut you,' and just as I said that Gum made a vicious lick at him with the knife and I jumped behind him and grabbed him by both arms and he struck back at me with his knife that way (indicating) and struck me here and cut me. * * * * * He threw back his hand and struck me there and I thought from the sting of the knife that he had cut me pretty badly but after I had him arrested and took him to jail I did not think so much of it. It was a small place but was cut deep and it was six weeks before it

was entirely healed up." At another point in his evidence this witness testified: "Q. When you first went in the sitting room, who was in there? A. Nobody but Gum. Q. I want you to tell the jury what he was doing? A. He was sitting there in the chair when I went in. Q. He wasn't saying anything to you or anyone else, was he? A. No, not at that time, he wasn't. Q. Who spoke first? A. I did—I said, 'Woods, what is all this excitement about,' and then he commenced. Q. The trouble started as soon as you said that? A. Yes, he commenced whenever I said that. I went in there at the instance of Mrs. Gum because she asked for protection." Defendant's wife corroborates the officer in his testimony, but says in addition, that before entering the room where defendant was, and where he was quietly sitting, the officer told her she would have to get a warrant before the arrest could be made.

There is no evidence of any offense committed by defendant in the presence of the officer or within his hearing, unless the offense of attempting an assault upon Dennison with the knife be an offense, but this was after Dennison had been called in to assist in making the arrest, and Waugh had taken hold of defendant's arms. The charge of the indictment is that the offense was committed while Waugh was attempting to arrest the defendant on the charge of being drunk and disorderly.

Did the facts proven entitle the defendant to the instructions refused, or either of them? As stated by Bishop, Bishop on Crim. Proc., section 181, "their powers of arrest do not differ greatly; or, at least, the differences at common law are not distinctly defined in the books. * * * * * For a past offense lower than felony, none of these officers can make an arrest without warrant; unless for example, it is such a dangerous assault as may end in felony, by the death of the injured person." See also 3 Cyc. 880.

The offense of being drunk and disorderly is not a felony. Section 9, ch. 153, Code 1906, among other things, provides: "If any person shall, in the presence of a constable, * * * * *appear in a state of gross intoxication in a public place;* such constable may, without warrant or other process, or further proof, arrest such offending person and carry him before some justice of the peace in the county, in which such offense is committed, * * * *." The statute, section 15, ch. 149, Code

1906, punishing drunkenness, provides: "If a person arrived at the age of discretion, profanely curse, or swear or get drunk, he shall be fined by a justice one dollar for each offense." Under neither of these statutes was the sergeant justified, without warrant, in making the arrest.

What rights then has a citizen in resisting an unlawful arrest? An arrest without warrant is a trespass, an unlawful assault upon the person, and how far one thus unlawfully assaulted may go in resistance is to be determined, as in other cases of assault. Life and liberty are regarded as standing substantially on one foundation; life being useless without liberty. 1 Bishop's New Crim. Law, section 868. And the authorities are uniform that where one is about to be unlawfully deprived of his liberty he may resist the aggressions of the offender, whether of a private citizen or a public officer, to the extent of taking the life of the assailant, if that be necessary to preserve his own life, or prevent infliction upon him of some great bodily harm. 1 Bishop's New Crim. Law, section 868; *State* v. *Clark,* 64 W. Va. 642, and cases cited. But just to what extent one may so resist, where the acts and conduct of the officer or aggressor do not threaten his life or any great bodily injury, the authorities are not very clear. The court, in *Jackson* v. *Com.,* 96 Va. 107, but as we thought in *Teel* v. *Railway Co.,* 66 W. Va. 315, 319, inadvertently approved an instruction which told the jury that defendant had the right to repel an assault "by all the force he deemed necessary." "At any rate" we said "we do not think one who is assaulted may use such force, in repelling the attack, as he deems necessary, if he should deem it necesary to use more force than a jury would say is reasonable under the circumstances, viewing the situation from the stand point of the assailant." And in the same case we criticised *Montgomery* v. *Com.,* 98 Va. 840, where we thought the court had gone to the other extreme in saying that a man may rightfully use as much force as is necessary for the protection of his person or property, provided he does not endanger human life or do great bodily harm. Another pertinent case is *State* v. *Gravely,* 66 W. Va. 375, 378-9. "The reason" says Bishop, *supra,* "why a man may not oppose an attempt on his liberty by the same extreme measures permissible in an

attempt on his life, appears to be because liberty can be secured by a resort to the laws."

But what is meant by saying, as *Teel* v. *Railway Co.,* and other authorities do, that one may not use more force than a jury would say is reasonable under the circumstances? May one under this rule use a club, or a cane, or as in the case we have here, a knife, if he do not go to the extent of killing his assailant or endangering his life, if in his judgment, viewing the situation from his stand point, it be necessary to do so to preserve his liberty and successfully ward off the assault upon him? We think the authorities justify answering this question in the negative. In 21 Cyc. 804, it is stated, that one thus situated "is justified in using or offering to use a deadly weapon only where he has reason to apprehend an injury greater than the mere unlawful arrest, as danger of death or great bodily harm." Numerous decisions are cited for this proposition in the foot notes. In *Coleman* v. *State,* 121 Ga. 594, 600, it is held that if the accused meets the unlawful assault with force proportionate to the attack he is in the right, but if he resists with disproportionate and therefore unlawful violence without being put in real or apparent danger of life or serious bodily harm he becomes the wrong doer. Says the court in this case, "the unlawful arrest justified a certain amount of resistance. But it did not justify shooting." In *Roberson* v. *State,* 43 Fla. 157, the court says: "If the attempt to arrest be unlawful, the party sought to be arrested may use such reasonable force, proportioned to the injury attempted upon him, as is necessary to effect his escape, but no more; and he cannot do this by using or offering to use a deadly weapon, if he has no reason to apprehend a greater injury than a mere unlawful arrest." In *Miller* v. *State,* 31 Tex. Cr. Rep., 609, 638, that court says: "He is not required to submit to illegal arrest, but may demand the warrant or proper authority, and in its absence repel force by force, provided the force does not exceed prevention and defense. Such force, however, can not be disproportionate to the injury. The right to repel force by force continues until the person attempting the illegal arrest presses forward with such violence that the person defending is obliged to choose between three things; to retreat, to surrender, or the death of his adversary. If the force used be dispro-

portionate to the injury about to be inflicted, self-defense is eliminated; and if it be attributed to any other cause than resistance to the illegal arrest, such arrest can not be looked to as a mitigating circumstances." In *State* v. *Row,* 81 Iowa 138, a case involving the killing of an officer while attempting to make an unlawful arrest, one of the instructions propounded by the State, in modification of the general proposition stated, said: "One may, however, rightfully resist, by reasonable and moderate force, an unlawful and unauthorized attempt to arrest him, or restrain him of his liberty; but is not justified or excused in carrying such resistence to an immoderate extent, or in using such extreme force or violence as to imperil life, unless the circumstances and manner of the attempted arrest be such that, as an ordinarily reasonable and prudent man, he fairly and honestly believes that he was in imminent peril of death or of great bodily harm, and there was no other reasonable way of escaping the danger except by killing his assailant." The criticism of this instruction by defendant's counsel was, that it only justified in self defense the use of "reasonable and moderate force", whereas, it was argued, "the only limit which the law places upon a man thus wrongfully sought to be deprived of his liberty is just that force which will prevent the doing of the unlawful purpose." "That" says the court "is the clear import of the instruction given. It enjoins moderate force only where moderate force will be effective, and it justifies sufficient force, even to the extent of taking life. The difficulty lies in giving effect to only a part of the language used." we do not think the court rightfully interpreted this instruction. As interpreted it implies that one thus about to be deprived of his liberty would be justified, if that extreme measure was necessary to make his resistance effective, in taking the life of his assailant, whether or not his own life was in danger or he was in danger of great bodily harm. We do not understand the authorities to go that far. In *People* v. *Denby,* 108 Cal. 54, a case involving an unlawful arrest, defendant had made use of a knife in resistance; and though he had threatened to do so, he had inflicted no wound upon the officer. The court held that the trial court erroneously refused to instruct the jury as requested by the defendant that "the witness Strait, not being a peace officer, had no right to arrest or at-

tempt to arrest the defendant for begging, and the defendant was justified in resisting such arrest or attempting to free himself from the hold of said witness, after he had arrested him, upon ascertaining that the person so arresting him was not an officer authorized to make arrest." As applicable to the facts in that case the instruction was proper and should have been given.

It is unnecessary we think to multiply authorities. Upon reason, as well as upon authority, we think the general rule, affirmed in *Roberson* v. *State,* 43 Fla. 157, may be properly adduced namely, that "if the attempt to arrest be unlawful, the party sought to be arrested may use such reasonable force, proportioned to the injury attempted upon him, as is necessary to effect his escape, but no more; and he cannot do this by using or offering to use a deadly weapon, if he has no reason to apprehend a greater injury than a mere unlawful arest."

Such being the law applicable to this case the court below committed no error in rejecting defendant's instructions three and four. While the general proposition stated therein that one may lawfully resist an unlawful arrest as stated, as applied to this case, they would in effect have told the jury that if necessary to successfully resist the arrest the defendant might lawfully use the deadly weapon he did use in inflicting the wound upon the officer. This we do not understand to be the law.

The fact that the assault was committed in defendant's residence, under the circumstances of this case, makes no difference. The officer had been invited there by the wife of defendant who desired his protection. The officer did wrong in attempting to make the arrest without a warrant, and his act was wholly unjustifiable; but this does not excuse the defendant in the use of the deadly weapon, endangering the life of the officer, and the unlawful cutting of which the jury found him guilty was an unjustifiable act.

The judgment of imprisonment for three years, however, under all the circumstances, we think was quite too severe; but we could not say, if we had been called upon to do so, that the court below exceeded its reasonable discretion. The judgment will therefore be affirmed.

*Affirmed.*