[No. 31716. Department Two. February 28, 1952.]

THE STATE OF WASHINGTON, *Respondent*, v. HAROLD R. ROUSSEAU, *Appellant.*[1]

[1]Reported in 241 P. (2d) 447.

*Samuel C. Rutherford, C. M. McCune,* and *John A. Godfrey,* for appellant.

*Charles O. Carroll* and *Euthemios Carras,* for respondent.

HILL, J.—Harold R. Rousseau appeals his conviction on a charge of burglary in the second degree, urging that a Swiss watch, exhibit No. 1, should not have been received in evidence against him, and that his pretrial motion to suppress that evidence should have been granted.

The pertinent circumstances are that a Seattle police officer, knowing appellant to be an ex-convict and knowing he had given an assumed name to the pawnbroker, saw the appellant attempting to pawn a Swiss wrist watch worth several hundred dollars for thirty dollars, after telling the pawnbroker that he had recently bought it at a jewelry store for one hundred dollars. The officer arrested the appellant after he left the pawnshop and, on searching him, found, in addition to the Swiss watch, three other wrist watches. The officer permitted the watches to remain in appellant's possession at that time.

Two judges of the superior court for King county concluded that the arrest and search were unlawful because the officer did not then know that the Swiss watch had been stolen; and we shall assume, for the purpose of this opinion, that they were correct.

The arrest occurred near First and Cherry streets in Seattle, and the officer and the appellant, who at his request had not been handcuffed, then started to go to appellant's automobile, proceeding east on Cherry street from First to Fifth avenue, where they stopped momentarily for a traffic light. As they stepped off the curb to continue eastward across Fifth avenue, the appellant pushed the officer into the path of an approaching automobile and started running west down Cherry street. The officer was able to catch himself on the hood of the car and sustained no injury, and immediately pursued the appellant. As the appellant attempted to run across Second avenue against a red light, he was hit by an automobile and sustained a cut over his eye, but con-

tinued his flight. The officer, however, finally caught up with him and took him into custody a second time, and then took him to the city jail in a prowler car. When appellant was searched there, the Swiss watch and the other watches were taken from his person. (The foregoing is the officer's version of what happened, and this the judge hearing the motion to suppress the evidence had a right to believe, as did the judge who tried the case and admitted the watch in evidence.)

It developed that the Swiss watch had been stolen from an apartment, and appellant signed a confession telling how he had entered the apartment and taken the watch. He was tried on a charge of burglary in the second degree and convicted.

It is appellant's contention that it was error not to grant his motion to suppress the evidence taken from his person, and that it was likewise error to admit the Swiss watch in evidence, because his arrest and search and the seizure of the watches were unlawful.

We start with the assumption that the first arrest and search were unlawful. The decisive issue then becomes: Were the second arrest and the search incidental thereto lawful?

It is the law that a person illegally arrested by an officer may resist that arrest, even to the extent of the taking of life if his own life or any great bodily harm is threatened. *John Bad Elk v. United States,* 177 U. S. 529, 44 L. Ed. 874, 20 S. Ct. 729; *State v. Gum,* 68 W. Va. 105, 69 S. E. 463, 33 L. R. A. (N.S.) 150. The extent to which one illegally arrested may carry his resistance when the acts and conduct of the officer do not threaten his life or any great bodily injury, presents a question on which there is considerable conflict of authority. It is generally recognized, however, that a man may not oppose an arrest which merely threatens his liberty with the same extreme measures permissible if an attempt is made on his life, because the individual wrongfully deprived of his liberty has a supposedly adequate redress by a resort to the laws. *State v. Gum, supra.* There

is authority to the effect that, even in the case of an unlawful arrest, the person arrested would be warranted in using force and inflicting personal injury upon the officer only in self-defense, the necessity or apparent necessity for which must appear. *State v. Spaulding,* 34 Minn. 361, 25 N. W. 793.

We find ourselves in accord with the supreme court of West Virginia, which, after an extensive survey and summary of the various holdings in that and other states, laid down the rule that the force used in resisting an unlawful arrest must be reasonable and proportioned to the injury attempted upon the party sought to be arrested, and he cannot use or offer to use a deadly weapon if he has no reason to apprehend a greater injury than a mere unlawful arrest. *State v. Gum, supra.* A similar rule was stated in a recent case, *State v. Robinson* (1950), 72 A. (2d) (Me.) 260, where it was said:

"An illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right, and only the same right, to use force in defending himself as he would have in repelling any other assault and battery."

Had the appellant merely attempted to escape from the officer by flight, there would be no question but that the second arrest was as illegal as the first.

"Every man, however guilty, has a right to shun an illegal arrest by flight. The exercise of this right should not, and would not, subject him to be arrested as a fugitive." *Thomas v. State,* 91 Ga. 204, 206, 18 S. E. 305; cited with approval in *Porter v. State,* 124 Ga. 297, 52 S. E. 283.

It is not the appellant's flight, but the fact that he pushed the officer into the path of an oncoming automobile, which could have seriously injured or killed the officer as effectively as though the appellant had used a gun, a knife, or other deadly weapon, that raises the question of whether the appellant used unreasonable force in resisting arrest and thereby committed an unjustified assault upon the officer, which would make the second apprehension and arrest of the appellant lawful.

■ The issue of whether unnecessary force has been used in resisting arrest usually arises in prosecutions for assaulting or killing arresting officers, and in such cases that issue is usually a question for the jury under all the circumstances. *Harris v. State,* 21 Ga. App. 792, 95 S. E. 268; 4 Am. Jur. 64, Arrest, § 92. But in a case such as this, it is an issue which must be passed upon by the court in the course of its determination of whether certain evidence should be suppressed, and whether or not it is admissible. To make the distinction clear as to the function of the jury in one type of case and of the court in the other, we would point out that if the appellant had been charged with assault upon the officer, the jury might have acquitted him of that charge because of a conclusion that (1) he did not actually push the officer or (2) did not use unreasonable force in resisting arrest; but if there was sufficient evidence to take those issues to the jury on an assault charge, the King county superior court did not err in holding that the appellant was subject to arrest for assault, and the officer who witnessed the assault (and, in this case, was its victim) was justified in making the arrest.

■ It is our view that a jury could have found that the appellant, in pushing an officer who had refrained from handcuffing him and who was using no force to detain him, into the path of an oncoming automobile, thereby subjecting the officer to the peril of serious and perhaps fatal injury, used unnecessary force in resisting arrest, and that his actions constituted a criminal assault. Appellant was, therefore, lawfully arrested following the assault, and the Swiss watch found on him by the search that was an incident of that arrest was admissible in evidence against him on the present charge of burglary in the second degree. We therefore conclude that the judge who heard the motion to suppress the evidence did not err in denying that motion, and that the trial judge did not err in admitting the Swiss watch taken from the appellant as an exhibit in his trial on that charge.

It is suggested that the confession which the appellant made was secured by the use of force and duress. The jury

was properly instructed as to the effect of force and duress as it may affect confessions, and there is no merit to this suggestion of error.

Nor is there merit to the contention that there was not sufficient evidence to sustain the conviction.

We commend counsel for both appellant and respondent for the manner in which this matter was presented in the superior court. The motion to suppress was heard by the Honorable Robert M. Jones, one of the judges of the superior court for King county, prior to the trial, and he denied the motion. At the trial, when counsel for the appellant, to preserve his record, objected to the admission of the evidence which appellant had sought to have suppressed, the record of the hearing before Judge Jones was made available to the trial judge, and his ruling as to the admissibility of the evidence in question was made on the basis of that record.

The judgment appealed from is affirmed.

SCHWELLENBACH, C. J., HAMLEY, and OLSON, JJ., concur.

FINLEY, J. (concurring in the result)—I agree with the majority that the first arrest was illegal; that a second arrest occurred in this case, and that the latter was lawful; consequently, I concur in the result reached by the majority. But I prefer to reach the result for reasons or on a basis not referred to by the majority. In other words, irrespective of the question of a second arrest in this case, and the question of whether it was valid and legal, the stolen wrist watch, in my judgment, should have been admitted as evidence and made available to the prosecution in proving the commission of a crime. Admittedly, this point of view calls for some reconsideration of our decision in *State v. Buckley*, 145 Wash. 87, 89, 258 Pac. 1030. In that case, the trial court's suppression of evidence was upheld by this court on the ground that the evidence had been acquired in connection with an alleged illegal arrest, search and seizure. At page 89, we said:

"It is the rule of the English courts, and is the rule of the courts in a majority of the American states, that the admis-

sibility of evidence is not affected by the manner in which, the means by which, or the source from which, it is obtained. It is held that, if the evidence is otherwise pertinent to the issue, it is no valid objection to its admissibility to show that it was unlawfully or illegally obtained. See the note of Mr. Freeman to *State v. Turner*, 82 Kan. 787, 109 Pac. 654, 136 Am. St. 129, 135. The highest court of the land, however, has uniformly followed a contrary rule. It has said, in no uncertain language, that it is beneath the dignity of the state, and contrary to public policy, for the state to use for its own profit evidence that has been obtained in violation of law. *Boyd v. United States*, 116 U. S. 616; *Weeks v. United States*, 232 U. S. 383; *Silverthorne Lumber Co. v. United States*, 251 U. S. 385; *Gouled v. United States*, 255 U. S. 298; *Amos v. United States*, 255 U. S. 313; *Agnello v. United States*, 269 U. S. 20. We have ourselves followed the Federal rule. *State v. Gibbons*, 118 Wash. 171, 203 Pac. 390; *State v. Dersiy*, 121 Wash. 455, 209 Pac. 837; *State v. Smathers*, 121 Wash. 472, 209 Pac. 839."

While the Federal rule, as announced in *Weeks v. United States, supra,* and applied in the United States courts, does not permit the admission of evidence or even the use of information acquired in connection with an illegal arrest or search and seizure, and while we have adopted the Federal rule substantially in this state by our decision in *State v. Buckley, supra,* it is quite apparent that the authorities generally are not in agreement on this problem.

5 Jones Commentaries on Evidence (2d ed.) 3875, § 2079, supports the *Weeks* case or Federal rule, *i.e.,* the exclusionary doctrine. 8 Wigmore on Evidence (3rd ed.) 31, § 2184, takes the opposite view. Wigmore characterizes the adoption by numerous jurisdictions of the "heretical influence of Weeks v. United States," as a "contagion of sentimentality in some of the State Courts, inducing them to break loose from long-settled fundamentals."

There is much to be said for the viewpoint of those authorities favoring the rule of exclusion or nonuse of evidence or information acquired through illegal arrest or search and seizure. This is particularly true in view of the facts, (1) that the exclusionary principle has been predicated upon the Fourth and Fifth Amendments of the United States Con-

stitution, and (2) that those amendments were the outgrowth of widespread English colonial abuses of authority involving compulsory testimony and arrest, search, and seizure, without warrant. The protection of individuals from illegal arrest, search, and seizure ostensibly is the principal purpose, or rationale, of the rule—and this is laudable; but realistically, there is much to be said for some reasonable modification or exception of the *Weeks* case doctrine as established in our state by the *Buckley* case.

Civil actions for damages, for false arrest and trespass are real possibilities in such situations. In addition to such civil actions is Rem. Rev. Stat., § 2240-1 [P.P.C. § 139-5]:

"It shall be unlawful for any policeman or other peace officer to enter and search any private dwelling-house or place of residence without the authority of a search-warrant issued upon a complaint as by law provided."

and Rem. Rev. Stat., § 2240-2 [P.P.C. § 139-7]:

"Any policeman or other peace officer violating the provisions of this act shall be guilty of a gross misdemeanor."

The foregoing statutes constitute significant restraints upon law·enforcement officers. They afford protection and recoupment to deserving individuals who are injured or victimized by officers, perhaps too zealously and not too cautiously engaged in law enforcement activities. The exclusionary or nonuse doctrine may occasion some dubious or vague general restraint or caution on the part of the more sensitive police officers. It certainly provides little protection, and no adjustment of damages, to particular individuals in specific cases when there has been an unlawful arrest, search or seizure. The damages, the unlawful acts, have already occurred. Any innocent persons damaged must still resort to civil action or criminal complaint for positive redress against the overzealous officers. It certainly seems to me that the exclusionary nonuse doctrine definitely is to be criticized because, as in *State v. Buckley, supra,* it often and unreasonably may obstruct prosecution and confer immunity upon undeserving law violators. It is perhaps the latter who today benefit most from the rule, rather than innocent

citizens, put upon, insulted and assaulted by hard-driving, short-cutting sheriffs and their posse men.

Why should criminal offenders, who would be unable successfully (1) to maintain a suit for civil damages, or (2) to press a criminal complaint against allegedly overzealous officers, nevertheless, be given immunities and assisted in avoiding prosecution for their misdeeds by applying the *Weeks* case, nonadmissibility-of-evidence doctrine? It seems to me a strange anomaly of the law, and an erroneous and unnecessary one, that the illegal—or at least the unexplained—possession of stolen property should be accorded such constitutional protection. If further protections are desirable against unlawful arrest, search, and seizure, they can and should be provided legislatively rather than through a somewhat emotional, shot-gun application of a rule of evidence which misses the bull's-eye, the specific aim or purpose of the rule—that is, the protection of the innocent, law-abiding citizen—about as often as it hits it. Legislation, on the other hand, could be pin-pointed and directed precisely at specific protection for innocent persons who are victimized by law enforcement officers. Among other things, (a) criminal penalties, and (b) the amount of civil damages recoverable, could be increased significantly. The legislature in a variety of ways could facilitate recovery of civil damages and provide any needed additional protection for innocent victims of unlawful arrest, search and seizure.

In order that the criticism of *State v. Buckley, supra,* as suggested herein, may be fully evaluated, the facts of that case are outlined as follows:

A room in an apartment house had been burglarized. The police were called. They investigated promptly. Upon learning that earlier in the night the occupants of another room in the apartment house had been making considerable noise, the officers knocked on that door. It was then opened by some one from within. Without waiting for an engraved invitation, the officers pushed their way inside. Even then, they may have overlooked introducing themselves, and whether they had ever met any of the roomers socially is

not apparent. Mr. Buckley, the defendant, was in bed. The time of day is perhaps immaterial. A search was made. A wrist watch, stolen from the other room of the apartment house, was found in the pockets of defendant's trousers. It was no doubt a great surprise to him and undoubtedly shocked his erstwhile roommates, and perhaps the officers as well; but nevertheless, there was the stolen wrist watch. A missing purse containing currency was found in a pillow on which the defendant was sleeping,—probably at the time quite blissfully, since he was yet unaware of any threatened violation of his constitutional rights, both state and Federal. Whether things were so blissful after the officers' abrupt and allegedly "ungenteel" entrance is another matter, *entirely*. The defendant was arrested. Later in the day the still curious, busy-body officers found a stolen travelers check,—and again, of all places, in the defendant's room. The wrist watch, the currency, and the travelers check were admitted as state's evidence. Thereafter, apparently convinced by argument and authorities cited by defense counsel, the trial court granted a new trial in the belief that it was error to have admitted the wrist watch and currency. On appeal, we adverted to the *Weeks* case and the exclusionary doctrine, and affirmed the granting of a new trial.

In view of the foregoing facts in the *Buckley* case, it would seem to me not to be too far-fetched or insensitive of the intent of our founding fathers to conclude that judicial recognition of Mr. Buckley's claim of violated constitutional rights amounted to a yielding to "a contagion of sentimentality," as suggested by Wigmore on Evidence, *supra*.

Mr. Buckley's situation and his contentions closely approximate those of the appellant in the case at bar. Constitutional protections regarding the stolen personal property, in my opinion, would be inappropriate and unsound. In accordance with the views expressed hereinabove, I think the stolen watch indigenous to the present case was admissible as evidence, irrespective of the validity of the second arrest. For this reason particularly, I concur in the result reached by the majority.