JENKINS *v.* STATE

[No. 47, September Term, 1963.]

Decided November 5, 1963.

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

Thomas J. Curley for appellant.

Robert L. Karwacki, Assistant Attorney General, with whom were Thomas B. Finan, Attorney General, Marvin H. Anderson and John A. Blondell, State's Attorney and Assistant State's Attorney, respectively, for Anne Arundel County, on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

Early on the morning of July 3, 1962, Lieutenant Erbe and Officer Martel, of the Anne Arundel County Police, who were assigned to the Ferndale headquarters, were each operating a patrol car. They met at Fishpaw's Service Station, located on the Ritchie Highway, just south of Manhattan Beach Road. At approximately 6:20 a.m. two unidentified persons approached the officers and reported having seen a man in a 1950 green Chevrolet acting in a peculiar manner on Manhattan Beach Road. In separate police cruisers the two officers proceeded to investigate. Officer Martel stopped at the local American Legion Hall to check for a car of the given description, while Lt. Erbe continued for about a half mile, where he observed a car of that description approaching him. Turning around, he began to follow the car while instructing Officer Martel by radio to flag it down. This Martel attempted to do, but he was forced to jump out of the path of the oncoming vehicle which accelerated and passed him.

Thus began a chase both north and south on Ritchie Highway, a dual lane highway with a grass median strip, culminating on Old Annapolis Road. However, before the car had reached the intersection of Manhattan Beach Road and Ritchie Highway, Lt. Erbe drove his police cruiser beside it, turned on the red stop signal and sounded the siren, but the car failed to stop. Instead it continued and turned south on Ritchie Highway. Lt. Erbe then attempted to force the car to come to a halt by passing the vehicle and then slowing down. However, this maneuver was thwarted by the driver of the errant car, who allowed it to collide with the rear of the police cruiser.

The chase continued. The operator of the Chevrolet ignored warning shots fired by Erbe, and he further attempted to force Officer Martel's patrol car off the highway. When the intersection of Ritchie and Route 50 was reached, the car turned around and proceeded in the north bound lane of Ritchie Highway. Further along the route a State policeman attempted to intercept the car, but he was forced off the highway. Finally, the car turned left onto Old Annapolis Road where, near Joyce Lane, it overturned, flipped back on its wheels and stopped. The operator, who was in need of medical attention, proved to be the appellant Jenkins. He was arrested and taken to a hospital for treatment.

In the Chevrolet were whiskey, cigarettes, cigars, knives, crab knives, confections and other miscellaneous property, a quantity of coins in denominations of quarters, nickels, and pennies, the total value of which was approximately $300. The overturning of the car had scattered these items, and it appeared that some of them spilled out on the ground in plain view of the officers. The officers took protective custody of the car and the items. The car was removed to Fishpaw's Service Station. The items were taken to the Ferndale Police Station, where they were assorted and photographed in Lt. Erbe's presence.

Less than an hour after the events described above it was reported, by a member of the police, that Larry's Tavern, owned by Nelson Pearce and located on Manhattan Beach Road about one-quarter mile from where the Chevrolet was first encountered, had been broken into. Subsequently Mr. Pearce identi-

fied some of the material found in the possession of the appellant as property taken from the tavern.

Jenkins was charged under two counts of an indictment with, respectively, breaking and entering the tavern with intent to commit a felony therein (grand larceny), and grand larceny. On December 17, 1962, he was tried in the Circuit Court for Anne Arundel County, before Judge Matthew S. Evans and a jury, when he was represented by court-appointed counsel, not his counsel on appeal. The jury returned verdicts of guilty on each count and the trial court imposed judgment and sentence of five years imprisonment in the Maryland House of Correction on each count, the sentences to run concurrently. Whereupon this appeal was taken.

The sole question presented here is whether certain articles found in the possession of the appellant at the time of his arrest should have been admitted into evidence at his trial on charges of breaking and entering and grand larceny. He contends that they were obtained by an illegal search and seizure, and thus are inadmissible in evidence under the ruling of the Supreme Court in *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. The State, on the other hand, urges that since no objection to the admissibility of the evidence in question was made at the time it was offered, under Maryland Rule 885 there is really nothing before us to review.

Our reading of the record confirms that not only was no timely objection made to the admissibility of this evidence at the trial, but appellant's trial counsel, in cross-examining Officer Martel, elicited from him an itemized list of the purloined goods found in the automobile.

Appellant is correct in asserting that *Mapp* precludes the use in State criminal proceedings of evidence obtained in an illegal search and seizure. But that decision was handed down on June 19, 1961. The trial in this case took place on December 17, 1962. Thus appellant was charged with knowledge of the *Mapp* case, and the construction of the Fourteenth Amendment to the United States Constitution it imports. As we very recently stated in *Porter v. State,* 230 Md. 535, 536-537, 187 A. 2d 870:

> "The now famous case of *Mapp v. Ohio* * * * which held that evidence obtained in an illegal search and seizure may no longer be used in a state prosecution, also recognized that state procedural requirements to raise or preserve the question may still be respected in the case of an alleged violation of the Fourteenth Amendment. *Shorey v. State,* 227 Md. 385, 389, 177 A. 2d 245. * * * [T]his Court has held that a party waives his right by not objecting to the evidence at the time it was offered. Rule 522 d 2; *Martin v. State,* 203 Md. 66, 72, 98 A. 2d 8; *Dick v. State,* 107 Md. 11, 68 Atl. 286. See also *Banks v. State,* 228 Md. 130, 132, 179 A. 2d 126. Therefore, we hold that since there was no objection to the introduction of the items in evidence at the time they were proffered, but only at the conclusion of the State's case and at the conclusion of the whole case, appellant has knowingly waived his right to question their admissibility on this appeal."

We think the same rationale is applicable here and hold that appellant has waived his right to have this Court review the admissibility of this evidence in his trial below.

Even if the question were properly reserved for review by this Court, we think the evidence was admissible.

Unlike the usual cases dealing with searches and seizures which come to us, there was here no actual search. As noted previously, the conglomerate material in the Chevrolet at the time it overturned and appellant was arrested was taken into protective custody by the officers. At that time they were not aware of the breaking and entry which had occurred at Larry's Tavern and only after subsequently learning of this did they *seize* the material *in a legal sense.*

Admittedly there was no search warrant issued. But appellant concedes in his brief that if an arrest is lawful the fruits of search and seizure incidental thereto are admissible in evidence. Appellant also concedes that where a misdemeanor is committed in the presence of a peace officer a lawful arrest may be made without a warrant and cites *Davids v. State,* 208 Md.

377, 118 A. 2d 636 (where we found an illegal arrest), but one of the line of cases recognizing this rule of law. Appellant's wilful refusal to comply with the lawful orders of police officers in the operation of the car (§ 181),[1] his failure to stop after the collision between his car and the police cruiser (§ 200), and his reckless driving (§ 209), undeniably constituted misdemeanors committed in the presence of the police officers.

Appellant seems to argue that the officers had insufficient information upon which to make an investigation; that even after they had located a car of the given description they still were not justified in subsequently pursuing it and stopping the driver. The answer to his contention, we think, is found by analogy to the principle involved where one uses force in resisting an unlawful arrest. The common law rule adhered to in this State is that a person illegally arrested by a police officer may use any reasonable means to effect his escape to the extent of using such force as is reasonably necessary under the circumstances. *Sugarman v. State,* 173 Md. 52, 57, 195 Atl. 324. See also *Williams v. State,* 204 Md. 55, 64, 102 A. 2d 714. On the other hand, the authorities generally hold that one threatened with an illegal arrest may not use excessive force in resisting such arrest and if he does he himself may be charged with an unlawful assault. 5 Am. Jur., 2d, *Arrest,* § 94. Cf. *Sharpe v. State,* 231 Md. 401, 403, 190 A. 2d 628; and *Kellum v. State,* 223 Md. 80, 85, 162 A. 2d 473.

In *State v. Rousseau,* 241 P. 2d 447 (Wash. 1952), the pertinent circumstances were that a peace officer, knowing appellant to be an ex-convict, saw him unsuccessfully attempt to pawn a Swiss watch. The officer arrested the appellant after he left the pawnshop, and on searching him found in addition to this watch, three others. But the officer allowed appellant to retain the watches at this time. He and the officer began to walk to the appellant's car but as they were proceeding appellant suddenly pushed the arresting officer into the path of an approaching car and took flight. Fortunately the officer sustained no injury and almost immediately pursued the appellant, finally

---

1. This and all future references to sections are to Code (1957), Article 66½, the motor vehicle law.

catching up with him and again taking him into custody. Appellant was searched at the jail and the watches were seized. Later, as in the case at bar, it was learned that the Swiss watch had been stolen. Appellant contended on appeal that the watch was illegally seized. The Supreme Court of Washington assumed that the first arrest and search were illegal. Recognizing the right to resist an illegal arrest, the Court at page 449 said:

> "It is not the appellant's flight, but the fact that he pushed the officer into the path of an oncoming automobile * * * that raises the question of whether the appellant used unreasonable force in resisting arrest and thereby committed an unjustified assault upon the officer, which would make the second apprehension and arrest of the appellant lawful."

Holding that a jury could have found use of excessive force, the Court concluded that the appellant was lawfully arrested following the assault, and the Swiss watch found on him by the search incident to that arrest, was admissible in evidence against him on a charge of burglary.

In *Rousseau* there was an illegal arrest and search, an assault committed upon the officer, and a subsequent legal arrest and seizure of the watch. In the case before us, even if we assume there was insufficient information to authorize the police to stop the car, there were subsequent traffic violations committed in the presence of the officers and a later arrest and seizure of the material found in the car and identified as having been stolen from Larry's Tavern. We think that just as the assault in *Rousseau* provided ample grounds for the second arrest and search, so the traffic violations were ample grounds for the arrest of Jenkins, and made lawful the seizure of the evidence found in the car.

*Judgment affirmed.*