[No. 5313–1.   Division One.   April 3, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. SCOTT A. TEUBER, *Appellant.*

*William S. Bailey* and *John H. Browne* of *Seattle–King County Public Defender,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Dennis R. Nollette, Deputy,* for respondent.

WILLIAMS, J.—Scott A. Teuber was charged with malicious destruction of property (RCW 9.61.070, since repealed), resisting a public officer (RCW 9.69.040, since repealed), and failing to provide information at the scene of an accident with an attended vehicle (RCW 46.52.020). He was convicted of the latter two crimes, but was acquitted of malicious destruction. His assignments of error concern the legality of the arrest, the applicability of RCW 46.52.020, which is commonly known as the hit–and–run statute, the alleged destruction of evidence, and certain instructions to the jury.

The facts are these. At about 9:30 p.m. on February 16, 1976, in Seattle, Jeffrey Evans and Patricia Wahl were sitting in Evans' car, which was parked in front of a duplex. Teuber and his family lived in one unit of the duplex, and Wahl and her parents lived in the other. While attempting to park his car, Teuber, whose driving was impaired by a toe–to–hip cast on his right leg, slowly backed up and "lightly tapped" the Evans vehicle, doing little or no damage. Evans then backed his car up about 10 feet, got out,

and walked ahead to talk to Teuber about the impact. After a brief conversation, the content of which is disputed, Evans got back into his car, intending that he and Wahl would go into her parents' house and phone the police. Suddenly, the Teuber vehicle came roaring backwards, "as fast as you can get going in 10 feet," and slammed into the Evans vehicle, this time causing considerable damage. Wahl and Evans, deciding against further conversation with Teuber, entered the Wahl residence and phoned the police. Officer Stockham arrived about 5 minutes thereafter. Finding Teuber gone and being unable to contact him either by phoning or knocking on his door, the officer impounded the Teuber vehicle.

A few hours later, when Teuber's wife came home and inquired as to the whereabouts of the car, Teuber phoned the police and reported that it had been stolen. At about 1 a.m., two officers, Homiston and Russell, were dispatched by radio to investigate the stolen car report. Officer Stockham, who by that time had resumed his normal patrol, heard the dispatch and arranged a meeting with the other two officers. At the meeting, the three discussed the recent events concerning Teuber and the possible charges that could be brought against him. Homiston and Russell decided to take advantage of Teuber's stolen car report and use that opportunity to arrest him. They went to Teuber's home and were invited in. When they informed Teuber that he was under arrest for second–degree assault, malicious destruction of property, and hit–and–run, a melee ensued involving Teuber, his wife, their 13–year–old son, and the two officers. Teuber was forcibly taken to jail.

At trial, Teuber testified that the collision was an accident; that he apologized to Evans, told him that he had insurance, and tried to talk about the accident, but that Evans wouldn't listen and retreated into the Wahl residence; that he didn't report the accident to the police because he knew that Evans and Wahl knew who he was; that he honestly thought his car had been stolen; and that he didn't forcibly resist his arrest.

The first question is whether Teuber was lawfully arrested. He argues that he was not, and that the charge of resisting a public officer cannot stand. *State v. Rousseau,* 40 Wn.2d 92, 241 P.2d 447 (1952); *Kennewick v. Keller,* 11 Wn. App. 777, 525 P.2d 267 (1974). Specifically, Teuber contends (1) that an arrest of this nature was not warranted for a mere traffic violation; (2) that an arrest for a misdemeanor is allowed only when the crime is committed in the officer's presence; (3) that charging the felony of second–degree assault, which was later changed to third-degree assault, a misdemeanor, was a "pretext" the officers used to avoid rule (2), above; and (4) that absent exigent circumstances, the constitution requires police officers to obtain an arrest warrant before intruding into the privacy of a home in the middle of the night. *See Dorman v. United States,* 435 F.2d 385 (D.C. Cir. 1970).

The State relies on RCW 46.64.017, which authorizes a police officer at the scene of a motor vehicle accident to make a brief arrest while he issues a notice and citation to the offending motorist, and RCW 10.31.100, which provides:

> Any police officer having information to support a reasonable belief that a person has committed or is committing a misdemeanor or gross misdemeanor, involving physical harm or threats of harm to any person or property or the unlawful taking of property or involving the use or possession of cannabis shall have the authority to arrest said person: *Provided,* That nothing herein shall extend or otherwise affect the powers of arrest prescribed in chapter 46 RCW.

RCW 46.64.017, by its terms, does not apply to a situation such as this, where the arrest is made away from the scene of the accident, some 4 hours later, by officers different from the ones who originally investigated the accident. *See State ex rel. McDonald v. Whatcom County Dist. Court,* 19 Wn. App. 429, 575 P.2d 1094 (1978).

■ However, the arrest was lawful under RCW 10.31-.100 because Officers Homiston and Russell had information to support their reasonable belief that Teuber had

committed a misdemeanor (malicious destruction, RCW 9.61.070) involving physical harm to property. In *State v. Huckaby*, 15 Wn. App. 280, 549 P.2d 35 (1976), Division Two of this court held that an arrest for possession of marijuana was lawful under RCW 10.31.100, where the officers used deception to gain entry to the defendant's home, in the nighttime, without a warrant or the presence of exigent circumstances.

This is not to say that RCW 10.31.100 permits arrests for the specified crimes under all circumstances. We question, for example, whether in the present case the statute would have authorized a nonconsensual entry of the Teuber home. However, Teuber waived his right of privacy by making what the jury could have found to be a false stolen car report, and by inviting into his home the officers who responded to the report. The officers' presence in the Teuber home continued to be lawful after they announced the nature of their visit and placed Teuber under arrest. *People v. Ramey*, 16 Cal. 3d 263, 275, 545 P.2d 1333, 127 Cal. Rptr. 629 (1976), one of the cases Teuber relies upon, notes the crucial difference between consensual and nonconsensual entry:

> Where genuine exigencies exist, broad constitutional mandates often give way to the necessity for immediate action, and an arrest is no exception to this rule. But in the absence of a bona fide emergency, *or consent to enter,* police action in seizing the individual in the home must be preceded by the judicial authorization of an arrest warrant.

(Italics ours.)

■ We also reject Teuber's argument that the second–degree assault charge was a "pretext" for the arrest. The record shows that the officers had probable cause to believe that Teuber, by intentionally driving his large car into Evans' much smaller one, occupied by two passengers, had very recently committed second–degree assault, which at that time was a felony defined as a willful assault with a

weapon or other instrument or thing likely to produce bodily harm. RCW 9.11.020(4). It makes no difference that Teuber was not later charged with that offense. *State ex rel. Fong v. Superior Court,* 29 Wn.2d 601, 188 P.2d 125 (1948). The arrest was legal, and the jury verdict on the charge of resisting a public officer is supported by substantial evidence.

The next question is whether the conviction for hit–and–run must be set aside as not supported by the evidence. RCW 46.52.020 provides:

> *Duty in case of injury to or death of person or damage to attended vehicle or other property.*
>
> . . .
>
> (2) The driver of any vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person or damage to other property shall immediately stop such vehicle at the scene of such accident or as close thereto as possible and shall forthwith return to, and in any event shall remain at, the scene of such accident until he has fulfilled the requirements of subdivision (3) of this section; every such stop shall be made without obstructing traffic more than is necessary;
>
> (3) Unless otherwise provided in subsection (6) of this section the driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person or damage to other property shall give his name, address and vehicle license number and shall exhibit his vehicle driver's license to any person struck or injured or the driver or any occupant of, or any person attending, any such vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person or on his behalf. Under no circumstances shall the rendering of assistance or other compliance with the provisions of this subsection be evidence of the liability of any driver for such accident;

(4) Any person failing to stop or to comply with any of the requirements of subdivision (3) of this section under said circumstances shall, upon conviction, be punished by imprisonment for not less than thirty days nor more than one year or by a fine of not less than one hundred dollars nor more than five hundred dollars, or by both such fine and imprisonment: *Provided,* That this provision shall not apply to any person injured or incapacitated by such accident to the extent of being physically incapable of complying herewith;

. . .

(6) In the event that none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (3) of this section, and no police officer is present, the driver of any vehicle involved in such accident after fulfilling all other requirements of subsections (1) and (3) of this section insofar as possible on his part to be performed shall forthwith report such accident to the nearest office of the duly authorized police authority and submit thereto the information specified in subsection (3) of this section.

The undisputed evidence is that Evans and Wahl left the scene of the accident, for good cause it is true, and at least 5 minutes elapsed before Officer Stockham arrived. Wahl was Teuber's next door neighbor; she knew and recognized him; in fact, Wahl and Teuber's daughter were close friends. The duties imposed by the statute, RCW 46.52.020, when an attended vehicle is damaged and there are no personal injuries, are that the motorist shall (1) stop at or as near the scene of the accident as possible; (2) return to the place of the accident; and (3) give his name, address and vehicle license number, and exhibit his vehicle operator's license. *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968).

By leaving the scene, Evans and Wahl obviated the requirement that Teuber exhibit his vehicle operator's license. His name and address were known, and the vehicle license number was on the car, which he did not move. Subsection (6) of RCW 46.52.020, above quoted, does not apply because the "persons specified" were "in condition to receive the information," but voluntarily departed. There is nothing in the record which would suggest that Teuber,

encumbered by the cast, was a physical threat to them once they were out of the car. Teuber did not commit hit–and–run.

The next question is whether the police improperly destroyed a tape recording of police radio communications between Officer Stockham and Officers Homiston and Russell. Teuber sought by means of the tape to show that the officers maliciously conspired to arrest him "for whatever reason they could concoct." Teuber was allowed to make a copy of the recording and to play the copy for the jury in the district court trial; however, he was not satisfied by the quality of the copy and argued that the most incriminating portions were unintelligible. When the case reached the superior court, he moved to produce the master tape, from which another copy might be made. The motion was granted, but by that time the police had erased the master tape for reuse, as was their normal procedure.

Teuber's due process rights were not violated by the erasure of the tape. Even assuming that the tape contained relevant evidence, and there is considerable doubt of that, Teuber had a chance to have a copy made, and did so. When that copy turned out to be unsatisfactory, he apparently waited some 3 months before making his motion to produce another copy, thereby waiving his right to assign error because of destruction of evidence.

As to the last question, concerning the instructions, Teuber did not comply with CR 51(f) at trial, nor has he complied with RAP 10.3(g) on appeal. We must disregard the argument concerning the instructions.

The judgment is affirmed, except for the hit–and–run conviction, which is reversed.

FARRIS, C.J., and CALLOW, J., concur.

Reconsideration denied June 22, 1978.

Review denied by Supreme Court December 1, 1978.